**The relief described hereinbelow is SO ORDERED.**

**Signed April 12, 2021.**

_____
**H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PDG PRESTIGE, INC., | § | Case No. 21-30107 |
| | § | |
| Debtor. | § | |
| | § | |

**FINAL ORDER GRANTING MOTION OF DEBTOR TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) PROVIDE RELATED RELIEF (RE: DOCKET NO. 24)**

On April 12, 2021 the Court conducted an expedited hearing regarding the *Motion to (I) Enter into Debtor Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Provide Related Relief* (Docket No. 24) (the "DIP Motion") filed herein on March 26, 2021 by PDG-Prestige, Inc., debtor and debtor in possession (the "Debtor" or "PDG") seeking entry of a final order for, *inter alia*:

1. authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority term loans (the "DIP Loans") in an aggregate maximum amount of $4,700,000 (the "DIP Commitment"), from certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner (as lender, agent, and collateral agent, the "DIP Lender"), as provided in that certain Debtor-in-Possession Term Loan Credit Agreement, dated as of the date hereof, among the Debtor and the DIP Lender (the "DIP Credit Agreement"), which DIP Credit Agreement was attached to the DIP Motion, and to incur the DIP Obligations contemplated thereby;

2. authorizing the Debtor to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the DIP Credit Agreement and other DIP Loan Documents;

3. authorizing the Debtor to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents;

4. providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate;

5. authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) in all DIP Collateral to secure pay of all DIP Obligations, comprising:

(i) pursuant to Code § 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Existing Liens;

(ii) pursuant to Code § 364(c)(3), junior DIP Liens on all DIP Collateral subject to Existing Liens;

(iii) pursuant to Code § 364(d)(1), equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens; and

(iv) pursuant to Code § 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens;

6. vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein;

7. approving all Cash-Management Requirements and the Debtor's entry into the cash-management arrangements and DIP Blocked Account control agreements contemplated thereby; and

8. granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1. On February 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

2. This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

3. An immediate and ongoing need exists for the Debtor to obtain postpetition financing in the amount of the DIP Commitment to reorganize under Bankruptcy Code Chapter 11, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

4. The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Commitment on terms more favorable than those provided by the DIP Lender.

5. sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

6. The terms of the DIP Loans, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and rights and remedies of the DIP Lender.

7. The terms of the DIP Loans, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Document.

8. Entry of this Final DIP Order is in the best interests of the Debtor's estate and its various stakeholders because it will, inter alia, allow the Debtor to reorganize under Bankruptcy Chapter 11 of the Code; and

9. The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents.

10. By stipulation with the DIP Lender, the Debtor is not a "single asset real estate" type of debtor as defined in Code § 101(51B).

**IT IS THEREFORE ORDERED THAT:**

1. Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED as set forth below.

2. The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3. The Debtor is authorized to borrow up to the full amount of the DIP Commitment in DIP Loans in one or more DIP Draws on the terms of the DIP Loan Documents, without application to or further order by the Court.

4. All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims, without application to or further order by the Court.

5. All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate (expressly including all DIP Collateral).

6. The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising:

    a. Pursuant to Code § 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Existing Liens;

    b. Pursuant to Code § 364(c)(3), junior DIP Liens on all DIP Collateral subject to Existing Liens

    c. Pursuant to Code § 364(d)(1), equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens; and

    d. Pursuant to Code § 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens.

7. The proceeds of the DIP Loans shall be used by the Debtor exclusively to (a) pay DIP Lender Expenses, (b) pay all other DIP Obligations, and (c) pay other amounts permitted under the Budget; provided that no portion of the DIP Loans

shall be used for fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, DIP Loan Document, or right or remedy of the DIP Lender.

8. So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

9. The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date.

10. An Event of Default shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents.

11. Notwithstanding Code § 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court:

    a. declare the DIP Commitment terminated;

    b. declare all DIP Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Debtor;

    c. terminate the Debtor's access to any DIP Blocked Account; and

    d. set off against any outstanding DIP Obligation all amounts held in the DIP Blocked Accounts (less, cumulatively across such accounts, the amount of the Triggered Carveout Cap (as defined below)).

12. Furthermore, while any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a. terminating the automatic stay with respect to any DIP Collateral;

    b. terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c. appointing an examiner or Chapter 11 trustee; and

    d. converting the Debtor's Case to Chapter 7;

    provided that if the DIP Lender so moves or applies, the Debtor shall be limited to contesting solely whether the Event of Default has occurred and/or is continuing,

and the Debtor has expressly waived the right to contest such relief whatsoever beyond the foregoing limitation.

13. In addition to the rights and remedies enumerated in Paragraphs 11 and 12, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14. In consideration of the DIP Lender's (x) consent to the current payment of administrative expenses of the Debtor's estate to the extent of the Budget and (y) concessions with respect to the Carveout (defined below), as described Paragraph 15, the DIP Lender is entitled to a full and complete waiver, with respect to all parties, of Code § 506(c) and in no event shall any the DIP Lender or DIP Collateral be subject to any "surcharge" or the doctrine of "marshalling" by any party in any way whatsoever.

15. Unless and until the Carveout Trigger Date (defined below), the Debtor shall pay administrative expenses of the Case in the ordinary course as permitted by the Budget (including the fees of counsel of the Debtor as approved by the Court on an interim and/or final basis). Notwithstanding the Budget or anything else herein or in any other DIP Loan Document to the contrary, from and after the date of delivery (the "Carveout Trigger Date") by the DIP Lender to the counsel to the Debtor and the Office of the United States Trustee (the "UST") of notice that both (a) an Event of Default has occurred and is continuing and (b) the DIP Lender has triggered the Carveout (a "Carveout Trigger Notice"), such administrative expenses shall be funded solely from an amount (the "Carveout"), not to exceed 2.50% of the DIP Loans then outstanding, to be set aside solely for (x) fees, expenses, and costs then due and payable to the UST and/or Clerk of the Court under 28 U.S.C. § 1930 plus (y) potential future fees, expenses, and costs of a statutory trustee appointed in the Debtor's case (together, the "Triggered Carveout Cap"); provided that in no event shall:

   a. payment of any amount contemplated by the Carveout or any portion of the Triggered Carveout Cap constitute a personal liability of the DIP Lender, any Affiliate, or any other Indemnified Person; or

   b. any such amount be used to fund fees, costs, or expenses incurred in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, DIP Loan Document, or right or remedy of the DIP Lender.

**ORDER GRANTING MOTION TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) PROVIDE RELATED RELIEF — Page 6**  1943767.DOCX [1]

        For the avoidance of doubt, (i) from and after the Carveout Trigger Date, the Debtor shall pay administrative expenses (irrespective of when incurred) solely as permitted under the Carveout, and (ii) the fees of the U.S. Trustee shall be paid in full by the Debtor and/or from proceeds of the DIP Loan.

16. The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

17. Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

18. This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Code § 1141(d)), (x) appointing an examiner or Chapter 11 trustee, (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

19. In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

20. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

21. The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

**22. NO LIEN GRANTED HEREIN TO THE DIP LENDER SHALL PRIME ANY STATUTORY LIEN OF ANY GOVERNMENTAL UNIT FOR AD VALOREM PROPERTY TAXES.**

23. The DIP Lender shall not assert the Debtor is a "single asset real estate" type of debtor nor assert any rights or seek any relief with respect to Code §362(d)(3).

24. The Debtor is authorized upon the Effective Date of the DIP Loan to advance to proposed counsel for the Debtor and/or counsel employed by the Debtor the funds indicated in the Budget for counsel and/or the carve out for Counsel, which funds counsel shall hold in trust pending interim and/or final approval of fees for such counsel.

25. As adequate protection and as part of the initial advance(s) under the Budget, and not later than April 16, 2021, the Lender shall pay, as part of the DIP Loan availability, by wire transfer to City Bank the amount of $2,705,661.10, plus all accrued post-petition interest and all accrued pre-petition and post-petition attorneys' fees, in full satisfaction of the claim of City Bank, whereupon City Bank shall execute and deliver to the Debtor a release of any and all liens of City Bank in, or, against any property of the Debtor and/or the DIP Collateral; provided, however, until such time as City Bank has received payment in full, any advances under the DIP Loan, including DIP Obligations and DIP Claims, shall not prime City Bank's Deed of Trust lien on the DIP Collateral or any property of the Debtor and its Bankruptcy Estate pursuant to § 364 of the Bankruptcy Code; and provided, further, upon payment of City Bank in full, the automatic stay, to the extent necessary, is modified to allow City Bank to apply the payment against the indebtedness owed.

26. With respect to New Mexico Real Estate Advisors, Inc. d/b/a Colliers International (together, "NMREA"), the following shall apply.

    a. With the initial advance under the Budget, the Debtor is authorized and directed to pay New Mexico Real Estate Advisors, Inc, ("NMREA") the amount of $168,862.00.

    b. Upon receipt of $168,862.00 NMREA shall execute and deliver to the Debtor a release of any and all liens of NMREA in, or, against any property of the Debtor and/or the DIP Collateral.

    c. An additional sum of $188,862.68 will be escrowed with a mutually agreeable third party (the "Escrow Fund"), which escrow amount will be funded by equal contributions during weeks 1-6 of Budget from funds advanced under DIP Loan.

    d.    NMERA and Debtor each reserves all rights, remedies, facts, claims, issues, and/or defenses with respect to the Escrowed Funds. The Escrowed Funds will be disbursed only upon mutual written agreement and/or order of the Court.

    e.    NMERA reserves the right to seek recovery of attorney fees and/or interest against the Escrowed Funds.

    f.    Interest shall accrue only when the second one-half of the commissions (which commissions are referenced and described in the NMREA lien filings) becomes payable under the operative contract(s).

    g.    NMREA shall adhere to the confidentially provisions of the Listing Agreement between PDG-P and NMREA and/or related to the subject real property.

###

Submitted by:
Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

PROPOSED ATTORNEYS FOR
PDG-PRESTIGE, INC.,
DEBTOR AND DEBTOR IN POSSESSION

*{continued on following sheet}*

**AGREED:**

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Jeff Carruth*
JEFF CARRUTH (TX SBN:. 24001846)
3030 Matlock Rd., Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

PROPOSED ATTORNEYS FOR PDG PRESTIGE, INC.
DEBTOR AND DEBTOR IN POSSESSION

MULLIN HOARD &BROWN, LLP

By: */s/ Brad W. Odell\**
Brad W. Odell, SBN: 24065839
P. O. Box 2585
Lubbock, Texas 79408-2585
Tel: (806) 765-7491
Fax: (806) 765-0553
Email: bodell@mhba.com

ATTORNEYS FOR CITY BANK

KEMP SMITH LLP

By: */s/ James W. Brewer\**
James W. Brewer
SBN 02965200
P.O. Box 2800
EI Paso, Texas 79999-2800
Tel: 915.533.4424
Fax: 915.546.5360
james.brewer@kempsmith.com

ATTORNEYS FOR NEW MEXICO REAL ESTATE
ADVISORS, INC. D/B/A COLLIERS
INTERNATIONAL

***Signature by permission by /s/ Jeff Carruth**

---

**ORDER GRANTING MOTION TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) PROVIDE RELATED RELIEF — Page 10**  1943767.DOCX [1]

United States Bankruptcy Court

Western District of Texas

| | |
|---|---|
| In re: | Case No. 21-30107-hcm |
| PDG Prestige, Inc. | Chapter 11 |
| Debtor | |

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0542-3 | User: MaxineMcG | Page 1 of 2 |
| Date Rcvd: Apr 12, 2021 | Form ID: pdfapac | Total Noticed: 19 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+          Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 14, 2021:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | PDG Prestige, Inc., 780 N Resler Drive, Suite B, El Paso, TX 79912-7196 |
| cr | + | City Of El Paso, Weston Centre, 112 E. Pecan St, Suite 2200, San Antonio, TX 78205-1588 |
| cr | + | City bank, c/o Brad Odell, Mullin Hoard & Brown, LLP, P. O. Box 2585, Lubbock, TX 79408-2585 |
| cr | + | HD Lending, LLC, P.O. Box 1977, El Paso, TX 79999-1977 |
| cr | + | New Mexico Real Estate Advisors, Inc. d/b/a Collie, c/o Kemp Smith LLP, Attn: James W. Brewer, 221 N. Kansas, Ste,. 1700, El Paso, TX 79901-1401 |
| 18140498 | + | City Bank, c/o Brad W. Odell, Mullin Hoard and Brown, LLP, P.O. Box 2585, Lubbock, Texas 79408-2585 |
| 18143284 | + | City of El Paso, c/o Don Stecker, 112 E. Pecan St. Suite 2200, San Antonio, TX 78205-1588 |
| 18140478 | + | CityBank, c/o Brad O'Dell, Mullin Hoard Brown, 1500 Broadway St #700, Lubbock, TX 79401-3111 |
| 18140479 | + | Dennis Crimmins, c/o Casey S. Stevenson, Scott Hulse, 201 East Main Drive #1100, El Paso, TX 79901-1340 |
| 18140480 | + | Dona Ana County Treasurer, 845 N Motel Blvd., Las Cruces, TX 88007-8100 |
| 18150895 | + | Gallardo, 2701 W Picacho Ave, Ste 6, Las Cruces, NM 88007-4732 |
| 18147564 | + | HD Lending, LLC, c/o Clyde A. Pine, Jr., Mounce, Green, Myers, P.O. Box 1977, El Paso, Texas 79999-1977 |
| 18140482 | + | Michael Dixson, 780 N. Resler Drive Suite B, El Paso, TX 79912-7196 |
| 18150896 | + | New Mexico Real Estate Advisors Inc d/b/, 5051 Journal Center Boulevard NE, Suite 200, Albuquerque, NM 87109-5914 |
| 18152268 | + | New Mexico Real Estate Advisors, Inc., d/b/a Colliers International, c/o Kemp Smith LLP, Attn: James W. Brewer, 221 N. Kansas, Ste. 1700 El Paso, TX 79901-1401 |
| 18150897 | + | PDG Inc., 780 N. Resler Drive Suite B, El Paso, TX 79912-7196 |
| 18140483 | + | Springer Management, c/o Tom Springer, 500 S. Telshor Blvd., Las Cruces, TX 88011-4613 |
| 18146641 | + | TEXAS WORKFORCE COMMISSION, OFFICE OF ATTORNEY GENERAL-Bankruptcy&Co, PO BOX 12548 - MC-008, AUSTIN, TX 78711-2548 |

TOTAL: 18

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| 18140481 | Email/Text: sbse.cio.bnc.mail@irs.gov | Apr 12 2021 23:14:00 | Internal Revenue Service, Special Procedures Staff - Insolvency, P. O. Box 7346, Philadelphia, PA 19101-7346 |

TOTAL: 1

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| 18143285 | *+ | City of El Paso, c/o Don Stecker, 112 E. Pecan St. Suite 2200, San Antonio, TX 78205-1588 |
| 18150898 | *+ | TEXAS WORKFORCE COMMISSION, OFFICE OF ATTORNEY GENERAL-Bankruptcy&Co, PO BOX 12548 - MC-008, AUSTIN, TX 78711-2548 |

TOTAL: 0 Undeliverable, 2 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and**

| District/off: 0542-3 | User: MaxineMcG | Page 2 of 2 |
|---|---|---|
| Date Rcvd: Apr 12, 2021 | Form ID: pdfapac | Total Noticed: 19 |

**belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 14, 2021         Signature:      /s/Joseph Speetjens

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 12, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Brad W. Odell | on behalf of Creditor City bank bodell@mhba.com memert@mhba.com;mreynolds@mhba.com;bwodellscvtxw@ecf.axosfs.com |
| Clyde A. Pine, Jr. | on behalf of Creditor HD Lending LLC pine@mgmsg.com, clyde.pine@gmail.com |
| Donald P. Stecker | on behalf of Creditor City Of El Paso don.stecker@lgbs.com |
| James W. Brewer | on behalf of Creditor New Mexico Real Estate Advisors Inc. d/b/a Colliers International jbrewer@kempsmith.com, tschoemer@kempsmith.com |
| Jeff Carruth | on behalf of Debtor PDG Prestige Inc. jcarruth@wkpz.com, jcarruth@aol.com;ATTY_CARRUTH@trustesolutions.com |
| United States Trustee - EP12 | USTPRegion07.SN.ECF@usdoj.gov |

TOTAL: 6