# EXHIBIT A

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
11/13/2020 2:11 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Ashley Barreras

**STATE OF NEW MEXICO**
**COUNTY OF DOÑA ANA**
**THIRD JUDICIAL DISTRICT**

| | | |
|---|---|---|
| DENNIS CRIMMINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: D-307-CV-2020-01698 |
| | ) | The Honorable James T. Martin |
| MICHAEL J. DIXSON, | ) | |
| PDG, INC., and PDG PRESTIGE INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff, DENNIS CRIMMINS ("Plaintiff") files this his First Amended Complaint complaining of acts and omissions by Defendants, MICHAEL J. DIXSON, PDG INC., and PDG Prestige Inc. (collectively "Defendants"). In support thereof Plaintiff would respectfully show the Court as follows:

### I.
### PARTIES

1. Plaintiff DENNIS CRIMMINS ("Crimmins") is an individual who resides in Otero County, New Mexico, and does business throughout the State of New Mexico.

2. Defendant MICHAEL J. DIXSON ("Dixson") has answered and appeared herein.

3. Defendant PDG Inc. ("PDG Inc.") has answered and appeared herein.

4. Defendant PDG Prestige Inc. ("PDG Prestige Inc.") has answered and appeared herein.

1190758.1

## II.
## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over Defendants because the allegations that form the basis of this suit transpired in New Mexico, the fraudulent transfers were properties in New Mexico, and the acts or omissions forming the basis of Plaintiff's claims transpired or otherwise occurred in New Mexico. The Court has subject matter jurisdiction in this matter because the amount in controversy is in excess of the minimum jurisdictional threshold for this Court.

6.     Venue in this action is proper in Doña Ana County, New Mexico pursuant to N.M. Stat. Ann. § 38-3-1 (1978) since Doña Ana County is the county where the lands that are the subject of the suit is situated.

## III.
## FACTS

7.     Crimmins and Dixson had a four-year business relationship that began in 2010. Their business relationship was to develop "turn-key" locations for franchisees of national restaurant chains and other projects.

8.     Crimmins and Dixson initially agreed they would pursue their business, and divide the duties and profits equally. In addition to their agreement dividing the work and the proceeds, they further agreed that Dixson, in seeking out potential projects, would work exclusively for the Crimmins/Dixson business, so that both Crimmins and Dixson would profit from any projects that Dixson located and was able to promote. For his part, Crimmins agreed that he would work with Dixson and provide financing, and would have the right to provide competitive construction services for the projects.  At some point in the relationship, in order to create a more formal

structure for the Crimmins/Dixson business enterprise, Dixson and Crimmins formed an entity, MDDC Investments, Ltd. ("MDDC"), that became entitled to Dixson's exclusive efforts.

9.     In November 2013, after Dixson and Crimmins experienced discord in their business relationship, Dixson and Crimmins entered into a "Transfer Agreement" under which they would part ways after winding up and splitting the profits from their pending development projects, which Dixson listed for inclusion in the agreement. Under the Transfer Agreement, Crimmins acquired 100% of the ownership in MDDC.  Moreover the Transfer Agreement, through Dixson, identified the remaining development projects initiated by Dixson, which Crimmins would have the option to finance, based upon their past business dealings.

10.     At the time the parties were negotiating the Transfer Agreement, Crimmins requested and received Dixson's assurances that the list of pending projects on the face of the November 2013 agreement were all of the pending projects that Dixson had begun promoting or developing.

11.     Throughout the life of their business relationship, until the November 2013 Transfer Agreement, Crimmins relied on Dixson's promises, Dixson would work exclusively for their joint benefit in seeking out, promoting and developing projects. Crimmins fully performed his obligations under the parties' oral and written agreements.

12.     Although the Transfer Agreement provided that MDDC would have the right of first refusal to finance the projects, Dixson, who controlled the projects, failed and refused to provide MDDC and Crimmins with the opportunity to exercise their rights for many projects.

13.     Despite, Dixson breaching the agreements, Dixson brought suit against Crimmins on September 8, 2014.

14.     Crimmins and his related business entities filed counterclaims against Dixson.

15. After extensive litigation, the parties settled the September, 2014 lawsuit by entering into a settlement agreement (the "Settlement Agreement") and an agreed Stipulated Order to Stay, on or about January 10, 2019 (the "Stay"). The Stay informed the judge that the parties had come to an agreement for payment of the amounts owed by Dixson and his entities to Crimmins and his entities. In addition to the Stay, the parties entered into, signed, and agreed to a stipulated judgment (the "Judgment"), that was to be entered by the Court if Dixson and his entities did not comply with the Settlement Agreement.

16. The Judgment agreed to between the parties, in the event of a default by Dixson and his entities under the Settlement Agreement, was in favor of White Sands Construction, Inc., Crimmins Family Limited Partnership, MDDC Investments, LLC. and Crimmins, and against Dixson and his entities PDG Inc., and JFAL Holding Company, LLC. Under the terms of the Settlement Agreement, the parties agreed that the Judgment would not be signed and entered by the Court so long as Dixson paid the amounts agreed to in the Settlement Agreement, and Dixson agreed to pay attorney's fees in the event the Settlement Agreement required enforcement, i.e., Dixson failed to comply with the terms of the Settlement Agreement. Similarly, the Judgment, which constitutes a binding contract between the parties, and which was ultimately entered as described below, specifically allows the "Crimmins Parties" to seek costs and attorney's fees for post-judgment collections efforts, including without limitation, fees and costs incurred in prosecuting the instant suit.

17. Dixson represented to Crimmins that if cash payment could not be made under the Settlement Agreement then Dixson would transfer properties to the Judgment Creditors, including Crimmins, to satisfy the Settlement Agreement and Judgment in whole or in part. Dixson first

made these proposals around November 2018, and continued to make the representations through the time of the execution of the Settlement Agreement.

18.     Unbeknownst to Crimmins, on or about August 7, 2018, when it was indisputable that a claim against Dixson and his entities accrued, and was due and owing, Dixson and PDG, Inc. caused real property, sufficient to satisfy the Judgment, owned by PDG, Inc. to be quitclaimed to PDG Prestige, Inc., a Texas corporation formed on or about April 9, 2018.  In addition, other property sufficient to satisfy the Judgment was transferred from PDG, Inc. to PDG Prestige Inc. on or about August 8, 2020. Upon information and belief, based upon the quitclaim of the properties described, no consideration or value of any kind was given for said properties.  These transfers and others are described in more detail below.

19.     Under the Settlement Agreement, Dixson agreed to pay the sum of $50,000.00, within forty-five (45) days after the date of execution of the Settlement Agreement, plus the sum of $1,450,000.00, within six (6) months after execution of the Settlement Agreement. (*See* Exhibit A).

20.     Dixson's $50,000.00 payment under the Settlement Agreement was due on or before February 25, 2019. The payment was not timely made. Therefore, Crimmins sent Dixson a Notice of Default on February 28, 2019.  Eventually Dixson made the $50,000 payment, but the balance due and owing under the Settlement Agreement was never made.

21.     On August 28, 2019 Judge Manuel Arrieta, entered the Judgment against PDG Inc. and Dixson as required under the terms of the Settlement Agreement. (*See* Exhibits B, F).

22.     Thereafter, the parties entered into a forbearance agreement relating to execution on, and collection of the Judgment (the "Forbearance Agreement"). The Forbearance Agreement required Dixson to pay Crimmins $100,000.00 within ten (10) days after the effective date of the Forbearance Agreement.  Dixson was then required to pay $50,000.00 forty-five (45) days after the effective date

of the Forbearance Agreement. Dixon further agreed to pay $50,000.00 within thirty (30) days after the initial $50,000.00 payment, and $15,000.00 each month thereafter until the Judgment was satisfied in full. Finally, in addition to the monthly payments, beginning in December, 2020, and every-year thereafter, Dixson agreed to make $100,000.00 payments to Crimmins until the Judgement was satisfied in full. (*See* Exhibit B).

23.     As noted above, and without Crimmins' knowledge, during the litigation, Dixson began transferring properties in his possession to other entities. Some of the transfers occurred between Dixson's own companies. Under information and belief, Dixson made these transfers in an attempt to escape payment of the Settlement Agreement, Forbearance Agreement, and the Judgment.

24.     On November 15, 2016, Michael Dixson transferred his interest to the Michael Dixson Trust, via warranty deed, in the following property:

> LOT NUMBERED 9, in Block Numbered A of Rancho Lomas Subdivision, Las Cruces, Dona Ana County, New Mexico, as the Same is Shown and Designated on the Plat of Said Rancho Lomas Subdivision, Filed in the Office of the County Clerk of Dona Ana County, New Mexico, on March 28, 2003, in Plat Book 20, Folio 298-299.

(*See* Exhibit C). The street address for this property is 2502 Los Alamos, Las Cruces, New Mexico. The trust then made a second transfer of this property to Connor Tryon and Carolina P. Orellano on December 25, 2017.

25.     For example, on August 7, 2018, PDG, Inc. transferred to PDG Prestige, Inc. via Instrument No. 1819067 its interest in the following property:

> Lot 1A of Mesilla Valley Mall Subdivision Replat No. 4, located in the City of Las Cruces, Dona Ana County, New Mexico, as the same shown and designated on the plat thereof filed for record in the Office of the County Clerk of Dona [sic.] County, New Mexico on March 14, 2001, in Book 19 at Page 608-609 Plat Records.

(*See* Exhibit D). PDG used a quitclaim deed to make this transfer.

26. In addition, on or around August 15, 2018, Prestige Development Group, and entity solely controlled by Michael Dixson, transferred to PDG, Inc. via Instrument No. 1819884, its interest in the following property:

> A certain parcel of land situated within Dona Ana Bend Colony Grant in Project Section 16, Township 23 South, Range 2, New Mexico Principal Meridian, City of Las Cruces, Dona Ana County, New Mexico, said parcel lying within Parcel 1-QCD-1 as shown on Right of way and Monumentation map N.M.P. No. IM-TP-025-1(73)03, CN 3130-A, I-25/Lohman Pond Boundary Survey, Plat #4741, recorded June 17, 2008, in Book22, Pages 503-504, and being more particularly described by New Mexico Plane Grid Bearings (Central Zone) . . .

(Exhibit E). Prior to PDG Inc. being deeded the property, PDG, Inc. attempted to transfer said property to PDG Prestige, Inc. on August 8, 2020 via a quitclaim deed. (*See* Exhibit E). However, PDG, Inc. did not own the property until August 15, 2020, and therefore, had nothing to quitclaim. Both of these transactions were recorded on August 20, 2020. PDG, Inc. owns the subject property, or alternatively there was a fraudulent transfer of the property to PDG Prestige, Inc.

## IV.
## CAUSES OF ACTION

**Cause of Action 1: Fraud.**

27. The litigation that began in 2014 all stemmed from property that PDG, Inc. and Dixson hid from Crimmins. However, as the parties came to an agreement and Dixson knew he would have a judgment entered against him, by agreement, Defendants transferred property sufficient to satisfy the Judgment, and hid that property from Crimmins. Defendants made representations that they knew were false, i.e., they made representations that they would pay the Judgment or transfer ownership of properties to Crimmins in satisfaction of the Judgment all the while intending to hide assets from Crimmins. Defendants knew the representations made to Crimmins were false because Defendants knowingly made the property transfers with the intent to deceive Crimmins and prevent collection of the Judgment against Defendants. Crimmins

detrimentally relied on Defendants' misrepresentations by entering into the Settlement Agreement and Forbearance Agreement, and not immediately seeking collection of the amounts due and owing. Such acts and/or omissions constitute fraud by Defendants and have damaged Crimmins in excess of the minimum jurisdictional limits of this Court.

**Cause of Action 2: Fraudulent Transfer.**

28.     Defendants' numerous transfers of property were in derogation of Crimmins' rights. Specifically, Defendants transferred at least three properties with an intent to hide those properties from Crimmins.

29.     Crimmins would show that the transfers were fraudulent and were made with actual intent to hinder, delay, and defraud Crimmins.

30.     Crimmins would further show that the transfers were made without Defendants receiving a reasonably equivalent value in exchange for the transfer.

31.     Dixson is the principal of both PDG, Inc., and PDG Prestige, Inc., the transferee of the properties.  Dixson signed the deeds on behalf of PDG, Inc.  Dixson knew or should have known that the transfers were made to defraud Crimmins.

32.     Crimmins would further show that the transfers were made without PDG, Inc. receiving a reasonably equivalent value in exchange for the transfer or obligation, and Defendants were engaged or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction to satisfy the amounts owed to Crimmins.

33.     Crimmins would further show that the transfers were made without PDG, Inc. receiving a reasonably equivalent value in exchange for the transfers or obligations and PDG, Inc.

and Dixson intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

34.     Crimmins would further show that the transfers were fraudulent as to Crimmins, as Crimmins' claims arose before the transfers were made or obligations incurred without PDG, Inc. receiving a reasonably equivalent value in exchange for the transfers or obligations and PDG, Inc. and Dixson were insolvent at that time or became insolvent as a result of the transfers or obligations.

35.     Actual intent exists as to all the transfers by Defendants under the New Mexico Uniform Voidable Transactions Act.

36.     Crimmins seeks any other relief the circumstances may require, in accordance with the New Mexico Uniform Voidable Transactions Act.

**Cause of Action 3: Breach of Contract.**

37.     The Settlement Agreement, Judgment, and Forebearance Agreement entered into between the Plaintiffs and Defendants constitute valid and enforceable contracts.  Plaintiffs performed as required under the Settlement Agreement, Judgment, and Forbearance Agreement. However, Defendants failed to make the payments as agreed, and their failure to do so constitutes a substantial breach.  Plaintiffs have been damaged by Defendants' breach in an amount that exceeds the minimum jurisdictional limits of this Court.

## V.
## PUNITIVE DAMAGES

38.     Defendants conduct was malicious, willful, reckless, fraudulent, and in bad faith. Accordingly, punitive damages should be awarded against them.

## VI.
## MISCELLANEOUS

39.     Under the terms of the Settlement Agreement, Judgment, and Forbearance Agreement, Crimmins is entitled to attorney's fees and costs through trial and appeal, pre-judgment and post-judgment interest as allowed by law, and costs of court.   Defendants specifically agreed that Crimmins is entitled to attorney's fees and costs for post-judgment collections efforts, including without limitation, post-judgment breach of contract, fraud, and fraudulent inducement suits as well as post-judgment motions and applications.

40.     All conditions precedent with respect to Crimmins claims and causes of action against Defendants have been performed or fulfilled or have occurred.

## VII.
## REQUEST FOR RELIEF

*FOR THESE REASONS*, DENNIS CRIMMINS requests that, MICHAEL J. DIXSON, PDG PRESTIGE INC., and PDG INC. be cited to appear and answer herein; that DENNIS CRIMMINS be granted judgment against DEFENDANTS actual damages and punitive damages; that DENNIS CRIMMINS be granted judgment for its attorney's fees through trial and appeal; that DENNIS CRIMMINS be granted judgment for pre-judgment interest and post-judgment interest as provided by law, plus costs of court; and that DENNIS CRIMMINS be granted such other and further relief, both general and special, at law or in equity, to which DENNIS CRIMMINS may show itself justly entitled.

Respectfully submitted,

**SCOTTHULSE PC**
201 N. Church Street, Suite 201
Las Cruces, NM 88001
      -and-
One Jacinto Plaza
Ste. 1100
El Paso, Texas  79901
(915) 533-2493
(915) 546-8333 Facsimile


By:     / s/ Casey S. Stevenson
        **CASEY S. STEVENSON**
        New Mexico Bar No.  127736
        *Attorneys for Plaintiff*




## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he did cause to be send via first-class mail, a true and correct copy of the foregoing instrument to the following opposing counsel of record this 13th day of November, 2020.

David P. Lutz
Martin & Lutz, P.C.
P.O. Drawer 1837
Las Cruces, NM  88004-1837
dplutz@qwestoffice.net


        /s/ Casey S. Stevenson
        **CASEY S. STEVENSON**

# EXHIBIT A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (herein "Agreement") executed and effective this 10th day of January, 2019, by and between PDG, INC., MICHAEL DIXSON and JFAL HOLDING COMPANY, LLC (herein collectively "the Dixson Parties"), and WHITE SANDS CONSTRUCTION, INC., CRIMMINS FAMILY LIMITED PARTNERSHIP, MDDC INVESTMENTS, LLC, and DENNIS CRIMMINS (herein collectively "the Crimmins Parties").

### RECITALS:

i.     The parties are involved in a lawsuit encaptioned PDG, INC., and MICHAEL DIXSON v. WHITE SANDS CONSTRUCTION, INC., CRIMMINS FAMILY LIMITED PARTNERSHIP, MDDC INVESTMENTS, LLC, DENNIS CRIMMINS and JOHN WHEELER, Third Judicial District Court, State of New Mexico, Cause No. D-307-CV-01845 (herein the "Lawsuit").

ii.    Pursuant to the agreement of the parties and the order of the Court in the Lawsuit, this matter was referred to arbitration before William C. Madison, Esq. (herein the "Arbitration Proceeding").

iii.   By execution and performance of this Agreement, the parties wish to settle and resolve all claims or disputes among them which are the subject of the Lawsuit and the Arbitration Proceeding. The parties acknowledge that this Agreement is supported by the exchange of mutual and valuable consideration. By

SETTLEMENT AGREEMENT - Page 1

virtue of the parties' participation in the Lawsuit and the Arbitration Proceeding, including extensive discovery in each, the parties are fully aware of the claims and defenses respectively asserted therein and therefore enter into this Agreement based upon their respective personal knowledge and information.

IT IS, THEREFORE, AGREED AS FOLLOWS:

1.      **Payment by the Dixson Parties.**  As consideration for the execution and performance of this Agreement, and subject to the terms of this Agreement, the Dixson Parties, jointly and severally, shall pay to the Crimmins Parties the following (collectively the "Payment Obligations"):

a.      The sum of FIFTY THOUSAND DOLLARS ($50,000.00), within forty-five (45) days after execution of this Agreement.

b.      The sum of ONE MILLION FOUR HUNDRED AND FIFTY THOUSAND DOLLARS ($1,450,000.00), within six (6) months after execution of this Agreement.

c.      Payments shall be made by certified check payable to "Dennis Crimmins " and delivered to:

>       John Boyd
>       Attorney for Crimmins Parties
>       20 First Plaza, Suite 700,
>       Albuquerque, New Mexico, 87102
>       505-842-9960

d.      So long as payments are delivered timely, no interest shall accrue on the Payment Obligations.

2.      **Stipulated Judgment/Enforcement of Payment Obligations.** At execution of this Agreement, the parties shall sign a stipulated judgment (herein the "Stipulated Judgment"), in substantially the form as attached hereto as Exhibit "**A**". So long as the Dixson Parties properly satisfy each of the Payment Obligations within the time periods provided, the Crimmins Parties shall take no action to enforce the Payment Obligations and shall not file the Stipulated Judgment. If and upon the  Dixson Parties' failure to properly and timely satisfy any of the Payment Obligations, the  Crimmins Parties shall have the following rights of enforcement:

a.      In the event of a default on either payment by the Dixson Parties, the Crimmins Parties may submit the Stipulated Judgment to the Court in the Lawsuit, along with an affidavit setting forth the outstanding principal balance due on the Payment Obligations (i.e., if the $50,000 was paid timely but the balance of the $1,500,000 has not been paid, the blank will be filled with the figure $1,450,000, whereas the entire amount will be filled in if the $50,000 has not been paid). In the event that the Dixson Parties disagree with the calculation of the asserted amount due under the Payment Obligations, the Dixson Parties may submit a responsive affidavit to the Court and move the Court to deny or reconsider entry of judgment.

SETTLEMENT AGREEMENT - Page 3

The Stipulated Judgment shall provide that the statutory judgment rate of interest of 8.75% per year pursuant to Section 56-8-4(A) NMSA (1978) will apply from date of entry. Unless and until the judgment is entered following a default as to either payment, the Crimmins Parties shall retain the Stipulated Judgment as confidential, and shall take no action to file, record or enforce the Stipulated Judgment. In the event of default and entry of Stipulated Judgment, the Crimmins Parties may proceed as set forth below.

b.      Before the Crimmins Parties may file the Stipulated Judgment as provided above, the Crimmins Parties must   mail and email written notice of any claimed default or delinquency to the Dixson Parties in care of The Allison Law Firm at P. O. Box 25344, Albuquerque, New Mexico 87125, with email copy to michael@allison-lawfirm.com, or at such other address as the Dixson Parties furnish to the Crimmins Parties in writing. The Dixson Parties shall have a period of five (5) days from mailing to cure said claimed default or noncompliance.

c.      In the event that the Dixson Parties fail to cure the default or delinquency within the stated period, the Crimmins Parties shall be entitled to file the Stipulated Judgment in the Lawsuit and proceed to collect the remaining balance of the Payment Obligations as a perfected judgment to the full extent allowed by law, including but not limited to the recording of a transcript of judgment in any

**SETTLEMENT AGREEMENT - Page 4**

county deemed appropriate by the Crimmins Parties; writ of execution; garnishment; supplemental proceedings; or other legal means.

3. **Procedural Status of Lawsuit.** Within five (5) days following full performance of this Agreement, the parties shall cooperate in filing a stipulation of dismissal of the Lawsuit with prejudice. In the event that the Crimmins Parties become entitled to file, and do file, the Stipulated Judgment, the Crimmins Parties may apply to the Court in the Lawsuit for enforcement of the Stipulated Judgment, including supplemental proceedings. Either the Dixson Parties or the Crimmins Parties may petition the Court for other claimed relief in the enforcement of this Agreement and/or the Stipulated Judgment.

At execution of this Agreement, the parties shall sign a Stipulated Order to Stay Case, signed by the parties and counsel (herein the "Stipulated Order to Stay Case"), in substantially the form as attached hereto as Exhibit "B". Counsel for the Crimmins Parties shall submit the Stipulated Order of Stay to the court.

4. **No Waiver of Contention of Non-Dischargeability.** The parties acknowledge that the Crimmins Parties have alleged in the Lawsuit that the Dixson Parties committed fraud against the Crimmins Parties and that the Stipulated Judgment reflects damages arising from that alleged fraud. That allegation is unresolved by this Agreement. The parties agree that in the event that any of the Dixson Parties files for protection under the bankruptcy laws the Crimmins Parties

SETTLEMENT AGREEMENT - Page 5

shall have the right to object to discharge of the Payment Obligations under 11

U.S.C. Section 523(a) or other applicable provision of the bankruptcy code based on

the fraud allegations.   The statute of limitations on fraud and related claims against

the Dixson Parties shall be tolled until the Payment Obligations have been paid in

full and the preference period under 11 U.S.C. Section 547 has expired.

     5.   **Waiver of Additional Claims and amounts.**   In reaching the

settlement evidenced by this Agreement, the Crimmins Parties accept the Payment

Obligations, Stipulated Judgment, collection rights and their preserved right to

assert non-dischargeability in satisfaction of their existing claims against the the

Dixson Parties, whether known or unknown, arising from any occurrences, events or

conduct pre-dating this Agreement, thereby waiving and releasing their right to

pursue any such other claims except as set forth herein including, without limitation,

the right to object to dischargeability in bankruptcy or reorganization based on

fraud.  Therefore, except for the Payment Obligations and any other obligations and

rights set forth herein, the Dixson Parties and their affiliated entities, on the one

hand, and the Crimmins Parties and their affiliated entities, on the other hand, do

hereby mutually release one another, and their respective agents, servants,

employees, representatives, attorneys, successors and assigns, of and from all other

claims of any kind relating to or arising from their prior business relationships or

**SETTLEMENT AGREEMENT - Page 6**

dealings and from any other claims arising from events or conduct predating this Agreement.

6.    **Attorneys Fees.**  In the event that either party is required to obtain legal counsel to successfully enforce any term of this Agreement, such party shall be entitled to the recovery of attorneys' fees and costs of court incurred in such act or actions of enforcement.

7.    **Confidentiality.** The parties or their representatives may disclose to anyone the fact that their dispute has been settled but may not disclose the terms of the settlement except as follows: 1) to professionals such as lawyers and accountants,  on a need-to-know basis, with the proviso that the party disclosing instruct the professional that he or she must keep the disclosed terms confidential; 2) to bankers as may be necessary in response to questions about source of funds paid pursuant to this Agreement, as to which inquiry Crimmins will state only that the funds come from Michael Dixson and/or an affiliated company in satisfaction of money owed from development projects; 3) to members of the party's immediate family, with the proviso that family members be instructed by the party to keep the terms confidential; 4) or as part of the court process.

All confidentiality requirements are void in the event that Dixson parties fail to timely make either payment required hereunder and the Crimmins parties

become thereby entitled to file the subject judgment of record and/or become entitled to engage in other collection efforts.

8. **Miscellaneous.**

8.1  **Governing Law.**  This Agreement and the transactions contemplated hereby shall be governed and construed in accordance with the laws of the State of New Mexico.

8.2  **Entire Agreement.**  This Agreement, and those documents executed concurrently herewith and specifically referenced herein, comprise the entire agreement and understanding of the parties.

8.3  **Binding Effect.**  This Agreement shall be binding upon and shall inure to the benefit of the respective successors and assigns of the parties hereto.

8.4  **Severability.**  If any provision of this Agreement shall be deemed invalid or unenforceable, the remaining provisions of the Agreement shall not be effected thereby unless it results in the substantial alteration or elimination of a material term.

8.5  **No Waiver.**  No failure to timely exercise a right existing under this Agreement shall be deemed a waiver of such right or of any other right existing under this Agreement.

8.6   **Effectuation.**  The parties shall promptly do all things reasonably necessary, including the execution of necessary documents, to effectuate and fulfill the purposes of this Agreement.

8.7   **Incorporation of Recitals.**  The recitals set forth at the beginning of this Agreement are incorporated herein by this reference.

8.8   **Headings.**  The section headings contained herein are for convenience only and shall not limit or otherwise affect the meaning of this Agreement.

8.9   **Modifications.**  This Agreement may be modified or amended only by a writing signed by each of the parties.

8.10  **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one instrument.

EXECUTED AND EFFECTIVE the date above first written.

PDG, INC.

By: _____

_____

MICHAEL DIXSON

**SETTLEMENT AGREEMENT - Page 9**

WHITE SANDS CONSTRUCTION, INC.

By: _____

CRIMMINS        FAMILY        LIMITED

PARTNERSHIP

By: _____

MDDC INVESTMENTS, LLC

By: _____

_____
DENNIS CRIMMINS, INDIVIDUALLY

**SETTLEMENT AGREEMENT - Page 10**

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

PDG, INC., and MICHAEL DIXSON,

      Plaintiffs,

v.                                                         No.  D-307-CV-2014-01845
                                                           Judge Douglas Driggers

WHITE SANDS CONSTRUCTION, INC.,
CRIMMINS FAMILY LIMITED PARTNERSHIP,
MDDC INVESTMENTS, LLC, DENNIS CRIMMINS,
and JOHN WHEELER,

      Defendants.

## <u>STIPULATED JUDGMENT AGAINST PDG, INC.,</u>
## <u>MICHAEL DIXSON AND JFAL HOLDING COMPANY, LLC.</u>

This matter comes before the Court upon the stipulation of all the parties:

1.  Judgment is hereby entered in favor of White Sands Construction, Inc., Crimmins

    Family Limited Partnership, MDDC Investments, LLC and Dennis Crimmins

    (herein collectively "the Crimmins Parties") and against PDB, Inc., Michael

    Dixson and HFAL Holding Company, LLC.(herein collectively "the Dixson

    Parties"), jointly and severally, in the amount of

    $_____, with interest accruing at 8.75% per year from

    date of entry.

2.  The Crimmins Parties may file a motion and affidavit seeking costs and attorney's

    fees for post-judgment collection efforts.

IT IS SO ORDERED.

_____

1

EXHIBIT A

District Court Judge

APPROVED AND SUBMITTED BY:

_____

John W. Boyd
Attorney for Defendants

APPROVED:

_____

Michael Allison
Attorney for Plaintiffs

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

PDG, INC., and MICHAEL DIXSON,

      Plaintiffs,

v.                                                    No.  D-307-CV-2014-01845
                                                      Judge Douglas Driggers

WHITE SANDS CONSTRUCTION, INC.,
CRIMMINS FAMILY LIMITED PARTNERSHIP,
MDDC INVESTMENTS, LLC, DENNIS CRIMMINS,
and JOHN WHEELER,

      Defendants.

## STIPULATED ORDER TO STAY CASE

    This matter comes before the Court upon the stipulation of the parties:

1.    The parties have reached a settlement.

2.    The parties desire to stay this matter until January 1, 2020, pending performance

      of settlement obligations as set forth in the parties' settlement agreement dated

      January 10, 2019.

    IT IS THEREFORE ORDERED that this case is stayed until January 1, 2020 or until

further Court order.

    IT IS FURTHER ORDERED that this stay will be terminated without further Court order

by any party providing written notice to the others that the agreement to stay the case is

terminated by breach of a payment obligation in the Parties' Settlement Agreement filing such

written notice with the Court.

1

EXHIBIT B

_____
District Court Judge

APPROVED AND SUBMITTED BY:

_____
John W. Boyd
Attorney for Defendants

APPROVED:

_____
Michael Allison
Attorney for Plaintiffs

2

# EXHIBIT B

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (herein "Agreement") executed and effective this 4th day of December, 2019, is by and between PDG, INC., MICHAEL DIXSON and JFAL HOLDING COMPANY, LLC (herein collectively "the Dixson Parties"), and WHITE SANDS CONSTRUCTION, INC., CRIMMINS FAMILY LIMITED PARTNERSHIP, MDDC INVESTMENTS, LLC, and DENNIS CRIMMINS (herein collectively "the Crimmins Parties"). This Agreement is to memorialize the agreement of the parties that the Crimmins Parties will forbear from taking further steps to execute on the judgment referenced and described below so long as the Dixson Parties comply with the payment obligations set forth below. The parties understand and agree that, if the Dixson Parties fail to satisfy any of the payment obligations described below, and fail to cure such payment within the time provided, the Crimmins Parties will have full rights to pursue collection of said judgment, or the amount then due thereunder, plus interest and attorneys' fees as provided in the judgment and existing Settlement Agreement of the parties, referenced below and herein.

### RECITALS:

i.     The parties were involved in a lawsuit captioned PDG, INC., and MICHAEL DIXSON v. WHITE SANDS CONSTRUCTION, INC., CRIMMINS FAMILY LIMITED PARTNERSHIP, MDDC INVESTMENTS, LLC, DENNIS CRIMMINS and JOHN WHEELER, Third Judicial District Court, State of New Mexico, Cause No. D-307-CV-01845 (herein the "Lawsuit").

ii.     The Lawsuit was settled by the parties pursuant to that certain "Settlement Agreement" effective on January 10, 2019. Pursuant to the terms of the Settlement Agreement,

1

the Dixson parties were obligated to satisfy certain payment obligations. The Dixson Parties satisfied the first payment obligation but failed to satisfy the remaining payment obligations under the Settlement Agreement, which failure resulted in the entry of the Stipulated Judgment referenced immediately below. The Settlement Agreement shall remain in full force and effect except as expressly modified by this Agreement.

     iii.     On August 28, 2019, the court entered a Stipulated Judgment in the Lawsuit, a true and correct copy of which is attached hereto as Exhibit "A", and is incorporated herein by reference (herein the "Judgment"). The principal amount of the Judgment is $1,450.000. Interest accrues on the principal amount of the Judgment, or any portion thereof remaining unpaid, at the annual rate of EIGHT AND THREE/QUARTERS PERCENT (8.75%) per annum.

     iv.     By execution and performance of this Agreement, the parties wish to settle and satisfy the Judgment, and otherwise resolve all claims or disputes among them which are the subject of the Lawsuit. The parties acknowledge that this Agreement is supported by the exchange of mutual and valuable consideration.

IT IS, THEREFORE, AGREED AS FOLLOWS:

1.     **Provisions Regarding Payment Obligations.**

a.     All Payment Obligations shall be paid by money order, certified funds or ACH transfer.

b.     There is no penalty for early payment of the Judgment, in whole or in part.

c.     If and upon the Dixson Parties' first failure to satisfy any Payment Obligation when due, a late fee of FIVE HUNDRED DOLLARS ($500.00) shall be due with such payment.

2

d.      If and upon the Dixson Parties' second failure to satisfy any Payment Obligation when due, a late fee of ONE THOUSAND DOLLARS ($1000.00) shall be due with such payment.

e.      If and upon the Dixson Parties' third failure to satisfy any Payment Obligation when due, or if any delinquency to satisfy any Payment Obligation for thirty (30) days occurs, the Crimmins Parties shall have the right to terminate this Agreement. In such event, all payments previously made by the Dixon Parties shall be credited to the then-outstanding balance of the Judgment, including interest provided in the judgment and herein and any penalties provided for herein.

f.      Any reasonable attorneys' fees incurred by the Crimmins Parties due to the breach of this Agreement by the Dixson Parties shall be added to the amount of the Judgment. This provision does not amend the parties' settlement agreement's provisions regarding attorneys' fees.

g.      The final payment of the Dixson Parties to satisfy the Judgment shall include the remaining outstanding principal balance, accrued and unpaid interest, accrued and unpaid penalties, all as provided hereunder or under the settlement agreement or under the judgment.

2.      **Payment by the Dixson Parties.** The Dixson Parties agree to pay to the Crimmins Parties, as they instruct, the amounts due under the Settlement Agreement and resulting Judgment, plus interest, penalties and attorneys' fees as may be required by the Settlement, the Judgment and/or this Agreement, as follows (collectively the "Payment Obligations"):

a.      The sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), or more,

3

within ten (10) days following execution of this Agreement.

b.    Additionally, the sum of FIFTY THOUSAND DOLLARS ($50,000.00), or more, within forty-five (45) days after execution of this Agreement.

c.    Additionally, commencing thirty (30) days following the due date for the payment of the FIFTY THOUSAND DOLLARS ($50,000.00) required in the preceding paragraph, and continuing thereafter for every succeeding month until the Judgment is satisfied in full, the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00).

d.    Additionally, commencing one (1) year from the effective date of this Agreement, the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), per year, and continuing thereafter on that month and day for every succeeding year until the Judgment is satisfied in full.

3.    **Forbearance/Enforcement of Payment Obligations.** For so long as the Dixson Parties properly satisfy each of the Payment Obligations within the time periods provided, the Crimmins Parties shall take no action to enforce the Judgment. If and upon the Dixson Parties' failure to properly and timely satisfy any of the Payment Obligations, the Crimmins Parties shall have the following rights of enforcement and shall proceed as follows:

a.    The Crimmins Parties shall send written notice of any claimed default or delinquency to the Dixson Parties in care of The Allison Law Firm at P. O. Box 25344, Albuquerque, New Mexico 87125, or at such other address as the Dixson Parties furnish to the Crimmins Parties in writing, via registered mail, addressed to Dennis Crimmins at P.O. Box 862, High Rolls, New Mexico, 88325. The Dixson Parties shall have a period of five (5) days from the mailing of the notice to cure said claimed default or noncompliance.

4

b.     In the event that the Dixson Parties fail to cure the default or delinquency within the stated period, the Crimmins Parties shall be entitled to terminate this agreement, enforce the Judgment and proceed to collect the remaining balance of the Judgment to the full extent allowed by law, including but not limited to writ of execution; garnishment; supplemental proceedings; or other legal means. In the event that the Crimmins parties elect to terminate this agreement in such event of default, they shall provide notice to the Dixson parties c/o Allison, as provided herein, and such termination shall be effective immediately upon mailing or emailing.

4.     **No Waiver of Contention of Non-Dischargeability.**  The parties acknowledge that the Crimmins Parties have alleged in the Lawsuit that the Dixson Parties committed fraud against the Crimmins Parties and that the Stipulated Judgment reflects damages arising from that alleged fraud. That allegation is unresolved. As a result, the parties agree that in the event that any of the Dixson Parties file for protection under the bankruptcy laws, the Crimmins Parties shall have the right to assert  non-dischargeability under 11 U.S.C. Section 523(A) or other applicable provision of the bankruptcy code.

5.     **Attorneys' Fees.**  If the Crimmins Parties are reasonably required to incur attorneys' fees and/or costs to enforce the obligations of the Dixson Parties under this Agreement (including the judgment and Settlement Agreement), those fees and costs shall be recoverable pursuant to the terms of the Settlement Agreement, Settlement Agreement and Judgment as may be applicable.

6.     **Miscellaneous.**

6.1     **Governing Law.**  This Agreement and the transactions contemplated hereby shall be governed and construed in accordance with the laws of the State of New Mexico.

5

6.2 **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the respective successors and assigns of the parties hereto.

6.3 **Severability.** If any provision of this Agreement shall be deemed invalid or unenforceable, the remaining provisions of the Agreement shall not be effected thereby unless it results in the substantial alteration or elimination of a material term.

6.4 **No Waiver.** No failure to timely exercise a right existing under this Agreement shall be deemed a waiver of such right or of any other right existing under this Agreement.

6.5 **Effectuation.** The parties shall promptly do all things reasonably necessary, including the execution of necessary documents, to effectuate and fulfill the purposes of this Agreement.

6.6 **Incorporation of Recitals.** The recitals set forth at the beginning of this Agreement are incorporated herein by this reference.

6.7 **Headings.** The section headings contained herein are for convenience only and shall not limit or otherwise affect the meaning of this Agreement.

6.8 **Modifications.** This Agreement may be modified or amended only by a writing signed by each of the parties.

6.9 **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one instrument.

EXECUTED AND EFFECTIVE the date above first written.

PDG, INC.

By:

MICHAEL DIXSON

WHITE SANDS CONSTRUCTION, INC.

By:

CRIMMINS FAMILY LIMITED PARTNERSHIP

By:

7

MDDC INVESTMENTS, LLC

By

DENNIS CRIMMINS

# EXHIBIT A

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
8/28/2019 2:59 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Veronica Uribe

PDG, INC., and MICHAEL DIXSON,

    Plaintiffs,

v.

                              Cause No. D-307-CV-2014-01845
                              Judge Manuel I. Arrieta

WHITE SANDS CONSTRUCTION, INC.,
CRIMMINS FAMILY LIMITED PARTNERSHIP,
MDDC INVESTMENTS, LLC, AND DENNIS
CRIMMINS, AND JOHN WHEELER,

    Defendants.

v.

JFAL HOLDING COMPANY, LLC,

    Third Party Defendant.

**STIPULATED JUDGMENT AGAINST PDG, INC.,
MICHAEL DIXSON, AND JFAL HOLDING COMPANY, LLC**

This matter comes before the Court upon the stipulation of all the parties:

1.    Judgment is hereby entered in favor of White Sands Construction, Inc., Crimmins Family Limited Partnership, MDDC Investments, LLC, and Dennis Crimmins (herein collectively "the Crimmins Parties"), and against PDG, Inc., Michael Dixson, and JFAL Holding Company, LLC (herein collectively "the Dixson Parties"), jointly and severally, in the amount of $1,450,000.00, with interest accruing at 8.75% per year from date of entry of this Stipulated Judgment.

2.    The Crimmins Parties may file a motion and affidavit seeking costs and attorney's fees for post-judgment collection efforts.



IT IS SO ORDERED.

JUDGE MANUEL I. ARRIETA
District Court Judge

Approved and Submitted By:

John W. Boyd
FREEDMAN BOYD HOLLANDER GOLDBERG
URIAS & WARD, P.A.
(505) 842-9960
jwb@fbdlaw.com
*Attorney for Defendants*

Approved By:

*Approved via email on 8-7-19*
Michael Allison
ALLISON LAW OFFICE
Albuquerque, NM 87108
(505) 204-7639
michael@allison-lawfirm.com
*Attorney for Plaintiffs*

2

# EXHIBIT C

Michael J. Dixson, a married man as his sole and separate property, for consideration paid, grant(s) to Michael Dixson, Trustee of the Michael Dixson Trust dated June 10, 2013, amended and restated on March 1, 2016 and any further amendments thereof whose address is 2502 Los Alamos CT, Las Cruces, NM 88011, the following described real estate in Dona Ana County, New Mexico:

LOT NUMBERED 9 IN BLOCK NUMBERED A OF RANCHO LOMAS SUBDIVISION, LAS CRUCES, DONA ANA COUNTY, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT OF SAID RANCHO LOMAS SUBDIVISION, FILED IN THE OFFICE OF THE COUNTY CLERK OF DONA ANA COUNTY, NEW MEXICO ON MARCH 28, 2003 IN PLAT BOOK 20, FOLIO 298-299.

**Subject to reservations, severances, restrictions, and easements of record and taxes for the year 2016 and subsequent years.**

with warranty covenants.

WITNESS my/our hand(s) and seal(s) this November _____, 2016.


_____
Michael J. Dixson


## Individual Capacity

State of New Mexico            )
                              ) §
County of Dona Ana            )

This instrument was acknowledged before me on the November 14th, 2016, by Michael J. Dixson.

My commission expires:                    _____
_____                   Notary Public



OFFICIAL SEAL
KRISTY N. FISHER
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires:_____

# EXHIBIT D

**QUITCLAIM DEED**

DONA ANA TITLE CO. INC.
GF # ACC158

PDG, Inc., a New Mexico corporation ("*Grantor*"), for consideration paid, quitclaims to PDG Prestige, Inc., a Texas corporation ("*Grantee*"), whose address is 300 North Main, Suite 1000, El Paso, Texas 79901, the following described real estate in Dona Ana County, Las Cruces, New Mexico, to-wit:

See attached legal description (Exhibit A)

WITNESS my hand and seal this __7th__ day of August 2018.

PDG, Inc.
a New Mexico corporation

_____
Michael Dixson, President/CEO

STATE OF NEW MEXICO )
                                              ss.
COUNTY OF DONA ANA )

The foregoing instrument was acknowledged before me this __7th__ day of August 2018, by Michael Dixson, President of PDG, Inc., a New Mexico corporation, on behalf of such corporation.

_____
Notary Public

My Commission Expires:

June 5, 2021

OFFICIAL SEAL
KRISTY N FISHER
NOTARY PUBLIC-State of New Mexico
My Commission Expires 05-2021

1819067                          AUG 10, 2018 09:06:52 AM         PAGES: 2
QUITCLAIM DEED                       Deputy: Gerardo Barrera
Scott Krahling, County Clerk, Dona Ana, NM

–1–

## EXHIBIT A

### Legal Description of the Land

Lot 1A of Mesilla Valley Mall Subdivision Replat No. 4, located in the City of Las Cruces, Dona Ana County, New Mexico, as the same shown and designated on the plat thereof filed for record in the Office of the County Clerk of Dona County, New Mexico on March 15, 2001, in Book 19 at Pages 608-609 Plat Records.

# EXHIBIT E

21-30107-hcm Doc#50-1 Filed 04/21/21 Entered 04/21/21 12:11:29 Exhibit A - Plaintiffs
First Amended Complaint Pg 45 of 51

DONA ANA COUNTY, NM    Filed: 08/20/2018 12:55:54 PM    Instrument #: 1819899    Page: 1 of 2

## QUITCLAIM DEED

PDG, Inc., a New Mexico corporation ("*Grantor*"), for consideration paid, quitclaims to PDG Prestige, Inc., a Texas corporation ("*Grantee*"), whose address is 300 North Main, Suite 1000, El Paso, Texas 79901, the following described real estate in Dona Ana County, Las Cruces, New Mexico, to-wit:

A certain parcel of land situated within Dona Ana Bend Colony Grant in Project Section 16, Township 23 South, Range 2, New Mexico Principal Meridian, City of Las Cruces, Dona Ana County, New Mexico, said parcel lying within Parcel 1-QCD-1 as shown on Right of way and Monumentation map N.M.P. No. IM-TPO-025-1(73)03, CN 3130-A, I-25/Lohman Pond Boundary Survey, Plat #4741, recorded June 17, 2008 in Book 22, Pages 503-504, and being more particularly described by New Mexico Plane Grid Bearings (Central Zone) and Ground distances as follows:

See attached Exhibit A

WITNESS my hand and seal this 9ᵗʰ day of August 2018.

PDG, Inc.
a New Mexico corporation

_____
Michael Dixson, President/CEO

STATE OF NEW MEXICO    )
                                            ) ss.
COUNTY OF DONA ANA    )

The foregoing instrument was acknowledged before me this 9ᵗʰ day of August 2018, by Michael Dixson, President of PDG, Inc., a New Mexico corporation, on behalf of such corporation.

_____
Notary Public

My Commission Expires:

June 5, 2021

OFFICIAL SEAL
KRISTY N FISHER
NOTARY PUBLIC-State of New Mexico
My Commission Expires  10-5-2021

1819899
QUITCLAIM DEED        AUG 20, 2018 12:55:54 PM    PAGES: 2
                            Deputy: Brandi Delgado
Scott Krahling, County Clerk, Dona Ana, NM

--1--

DONA ANA COUNTY, NM          08/20/2018  12:45:54 PM          Instrument # 1819899          Page: 2 of 2

# EXHIBIT A

BEGINNING at the northwest corner (No. 5 Rebar with aluminum cap set) of said parcel herein described, said point being on survey centerline (Interstate-25) P.O.T. Station 228+38.45, Offset 309.21' Right of N.M.P. No. I-010-2(6)143 and N.M.P. No. IM-TPO-025-1(73)03, being a point on the Present (2015) Existing southerly Right of Way and Existing Access Control line (East Lohman Avenue), whence the City of Las Cruces Brass Cap GPS #11 (New Mexico Department of Transportation Brass Cap Control Point D1038 - 8) found in place bears N13°20'22"W a distance of 2664.98 feet;

Thence N56°27'01"E along the Present (2015) Existing southerly Right of Way Line and Existing Access Control Line of East Lohman Avenue, N.M.P. No. I-010-2(6)143 a distance of 295.20 feet to a found 5/8" rebar for the northeast corner of said parcel;

Thence S23°12'17"E along the Present (2015) Existing easterly Right of Way line of N.M.P. No. I-010-2(6)143 a distance of 136.77 feet to a found 2" aluminum cap stamped "7250" at a point of curvature;

Thence southerly, 293.64 feet along the arc of a curve to the right, along the Present (2015) Existing easterly Right of Way Line of N.M.P. No. I-010-2(6)143, having a radius of 350.00 feet, a Central Angle of 48°04'13", a Chord which bears S00°49'50"W a distance of 285.11 feet to a found 2" aluminum cap stamped "7250";

Thence N47°26'04"W a distance of 125.73 feet to a No. 5 Rebar with aluminum cap set on an angle point;

Thence N53°24'05"W a distance of 140.68 feet to a No. 5 Rebar with aluminum cap set on an angle point;

Thence N89°15'59"W a distance of 34.86 feet to a No. 5 Rebar with aluminum cap set on an angle point;

Thence N35°16'57"W a distance of 95.89 feet to a point on the Present (2015) Existing southerly Right of Way line and Existing Access Control line of East Lohman Avenue, N.M.P. No. I-010-2(6)143 and point and place of beginning.

Said parcel contains 69,252 Square Feet or 1.590 Acres, more or less.

Return to Dona Ana Title Company
File No. 2277152-DA06 SCB

# WARRANTY DEED

Prestige Development Group, Inc., a New Mexico corporation, for consideration paid, grant(s)
to PDG, Inc., a New Mexico corporation whose address is 141 N Roadrunner Ste 137, Las Cruces,
NM 88011, the following described real estate in Dona Ana County, New Mexico:

A certain parcel of land situated within the Dona Ana Bend Colony Grant in Projected Section 16,
Township 23 South, Range 2 East, New Mexico Principal Meridian, City of Las Cruces, Dona Ana
County, New Mexico, said parcel lying within parcel 1-QCD-1 as shown on Right of Way and
Monumentation Map N.M.P. No.IM-TPO-025-1(73)03, CN 3130-A, I-25 / Lohman Pond Boundary
Survey, Plat # 4741, recorded June 17, 2008 in Book 22, Pages 503-504, and being more
particularly described by New Mexico State Plane Grid Bearings (Central Zone) and Ground distances
as follows:

BEGINNING at the northwest corner (No. 5 Rebar with aluminum cap set) of said parcel herein
described, said point being on survey centerline (Interstate-25) P.O.T. Station 228+38.45, Offset
309.21' Right of N.M.P. No. I-010-2(6)143 and N.M.P. No. IM-TPO-025-1(73)03, being a point on
the Present (2015) Existing southerly Right of Way and Existing Access Control line (East Lohman
Avenue), whence the City of Las Cruces Brass Cap GPS #11 (New Mexico Department of
Transportation Brass Cap Control Point D1038 - 8) found in place bears N13°20'22"W a distance of
2664.98 feet;

Thence N56°27'01"E along the Present (2015) Existing southerly Right of Way Line and Existing
Access Control Line of East Lohman Avenue, N.M.P. No. I-010-2(6)143 a distance of 295.20 feet to a
found 5/8" rebar for the northeast corner of said parcel;

Thence S23°12'17"E along the Present (2015) Existing easterly Right of Way Line of N.M.P. No. I-
010-2(6)143 a distance of 136.77 feet to a found 2" aluminum cap stamped "7250" at a point of
curvature;

Thence southerly 293.64 feet along the arc of a curve to the right, along the Present (2015) Existing
easterly Right of Way Line of N.M.P. No. I-010-2(6)143, having a radius of 350.00 feet, a Central
Angle of 48°04'13", a Chord which bears S00°49'50"W a distance of 285.11 feet to a found 2"
aluminum cap stamped "7250";

Thence N47°26'04"W a distance of 125.73 feet to a No. 5 Rebar with aluminum cap set on an angle
point;

Thence N53°24'05"W a distance of 140.68 feet to a No. 5 Rebar with aluminum cap set on an angle
point;

Thence N89°15'59"W a distance of 34.86 feet to a No. 5 Rebar with aluminum cap set on an angle
point;

Thence N35°16'57"W a distance of 95.89 feet to a point on the Present (2015) Existing southerly Right of Way line and Existing Access Control line of East Lohman Avenue, N.M.P. No. I-010-2(6)143 and point and place of beginning.

**Subject to reservations, severances, restrictions, and easements of record and taxes for the year 2018 and subsequent years.**

with warranty covenants.

WITNESS my/our hand(s) and seal(s) this _____

8 - 15 - 18

Prestige Development Group, Inc.

_____
Michael Dixson, President

### Representative Capacity

State of New Mexico          )
                             ) §
County of Dona Ana           )

This instrument was acknowledged before me on ___August 15, 2018___ by Michael Dixson as President of Prestige Development Group, Inc., a NM corporation, on behalf of said corporation .

_____
Notary Public

My commission expires:
June 5, 2021

(Seal)

OFFICIAL SEAL
KRISTY N FISHER
NOTARY PUBLIC-State of New Mexico
My Commission Expires

# EXHIBIT F

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
8/28/2019 2:59 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Veronica Uribe

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

PDG, INC., and MICHAEL DIXSON,

     Plaintiffs,

v.

WHITE SANDS CONSTRUCTION, INC.,
CRIMMINS FAMILY LIMITED PARTNERSHIP,
MDDC INVESTMENTS, LLC, AND DENNIS
CRIMMINS, AND JOHN WHEELER,

     Defendants.

v.

JFAL HOLDING COMPANY, LLC,

     Third Party Defendant.

Cause No. D-307-CV-2014-01845
Judge Manuel I. Arrieta

## STIPULATED JUDGMENT AGAINST PDG, INC., MICHAEL DIXSON, AND JFAL HOLDING COMPANY, LLC

This matter comes before the Court upon the stipulation of all the parties:

1.    Judgment is hereby entered in favor of White Sands Construction, Inc., Crimmins Family Limited Partnership, MDDC Investments, LLC, and Dennis Crimmins (herein collectively "the Crimmins Parties"), and against PDG, Inc., Michael Dixson, and JFAL Holding Company, LLC (herein collectively "the Dixson Parties"), jointly and severally, in the amount of $1,450,000.00, with interest accruing at 8.75% per year from date of entry of this Stipulated Judgment.

2.    The Crimmins Parties may file a motion and affidavit seeking costs and attorney's fees for post-judgment collection efforts.


EXHIBIT
A

IT IS SO ORDERED.

_____
JUDGE MANUEL I. ARRIETA
District Court Judge

Approved and Submitted By:

John W. Boyd
FREEDMAN BOYD HOLLANDER GOLDBERG
URIAS & WARD, P.A.
(505) 842-9960
jwb@fbdlaw.com
*Attorney for Defendants*

Approved By:

*Approved via email on 8-7-19*
Michael Allison
ALLISON LAW OFFICE
Albuquerque, NM 87108
(505) 204-7639
michael@allison-lawfirm.com
*Attorney for Plaintiffs*

2