UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 21-30107 |
| PDG PRESTIGE INC. | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

**SECOND AMENDED PLAN OF REORGANIZATION OF PDG PRESTIGE INC. DATED MARCH 29 2022, AS MODIFIED**

**1. INTRODUCTION.**

1.1. This *Second Amended Plan of Reorganization of PDG Prestige, Inc. Dated March 29, 2022, as Modified* (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of PDG Prestige Inc. (the "Debtor" or "PDGP") from cash flow from future operations and/or sales of property. This Plan dated March 29, 2022 as modified on March 31, 2022 as shown in the file-stamp above, replaces and supersedes any Plan(s) of prior date(s) filed by the Debtor.

1.2. For convenience, this plan is based upon the official small business form, Form B25B. However, this is not a "small business case" as defined under Code § 101. ***Controlling definitions and rules of construction appear in Section 9 below.***

1.3. The proposed distributions under the Plan and the material terms of the Plan, including the estimated distribution to unsecured creditors is set forth in TABLE 1—Key Plan Terms, Section 2 of the accompanying Plan ("**TABLE 1**"). Secured claims will be paid in full according to the claim(s) filed or pursuant to the agreement of the parties. General unsecured creditors will receive payment in full.

1.4. All creditors and equity security holders should refer to Section 3 through Section 6 of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. ***You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

2. **SUMMARY OF THE PLAN, TABLE 1 — KEY PLAN TERMS.** The key terms of this Plan are set forth in TABLE 1 below.

| TABLE 1 KEY PLAN TERMS ||||||||| |
|---|---|---|---|---|---|---|---|---|
| **TREATMENT OF CLAIMS** ||||||||| |
| Class | Creditor | Impaired | Asserted Claim | Interest Rate Per Year | Payments ## | Payment Per Month | Total Payments | Note |
| **Non-classified Claims** ||||||||| |
| | WKPZ Fees (estimated) | n/a | 70,000.00 | n/a | 1.00 | n/a | 70,000.00 | |
| | IRS | n/a | 100,172.02 | 0.03 | 54.00 | 1,855.04 | 100,172.02 | |
| **Secured Claims** ||||||||| |
| 1 | Property Tax - Dona Ana Co. | No | 0.00 | n/a | n/a | n/a | n/a | |
| 2 | Legalist | No | 5,200,000.00 | 0.10 | 120.00 | n/a | 5,200,000.00 | Note 1 |
| 3 | NMREA | Yes | 168,862.00 | n/a | n/a | n/a | 168,862.00 | Note 2 |
| 4 | Crimmins | n/a | n/a | n/a | n/a | n/a | n/a | Note 3 |
| **General Unsecured Claims** ||||||||| |
| 5 | General Unsecured | Yes | 22,627.00 | 0.00 | 0.00 | see plan | 22,627.00 | 0.00 |
| 6 | Equity Interest | n/a | n/a | n/a | n/a | n/a | n/a | |
| **EQUITY IN REORGANIZED DEBTOR** ||||||||| |
| | Holder | % Interest || Pre-Bk Interest | Consideration ||| |
| | Michael Dixson | 100.00 || Class A | N/A - Payment in full to all creditors ||| |
| **MANAGEMENT AFTER REORGANIZATION** ||||||||| |
| | Name | Position ||| Comp. Per Month || Comp. Per Year | |
| | Michael Dixson | Manager ||| 16,666.67 || 200,000.00 | |
| | Note: Compensation dependent upon payment of claims and-or funds available. ||||||||| |
| **EXECUTORY CONTRACTS AND/OR LEASES TO BE ASSUMED** ||||||||| |
| | See Section 7.1 of the Plan ||||||||| |
| Note 1: Claim paid in accordance with DIP order. See Section 5. ||||||||| |
| Note 2: Contingent, disputed. Also subject to potential setoff. See Section 5. ||||||||| |
| Note 3: Crimmins has not filed a formal proof of claim. See Section 5. ||||||||| |

3. **CLASSIFICATION OF CLAIMS**

   The classification of claims and interests and the impairment of claims and interests is set forth in TABLE 1.

4. **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

   4.1. **Unclassified Claims.** Certain types of claims are automatically entitled to specific treatment under the Code. Under Code §1123(a)(1), administrative expense claims, and priority tax claims are not in classes. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, pursuant to Code §1129(a)(1), the Debtor has *not* placed such claims in any class.

   4.2. **Administrative Expenses.** Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code §507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

   As of the filing of this Plan, the Debtor has received no notice of any administrative expense, other than attorneys' fees and expenses of Weycer Kaplan Pulaski & Zuber P.C. ("WKPZ") incurred for PDGP. As a condition of and prior to the Effective Date, PDGP shall reserve sufficient funds to satisfy the anticipated final allowed administrative claim of WKPZ for fees and expenses.

   4.3. **Priority Tax Claims.**

   4.3.1. Priority tax claims are unsecured income, employment, and other taxes described by Code §507(a)(8). Pursuant to Code §1129(a)(9), unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular monthly installments paid over a period not exceeding five (5) years from the order of relief (which order of relief occurred on February 15, 2021).

   The two (2) claims in this class consist of the Internal Revenue Service (Proof of Claim No. 4, as amended, and discussed below) and the Texas Comptroller (Proof of Claim No. 6, in the amount of $1,000).

   The Debtor will treat such claims, to the extent allowed, in accordance with Code §1129(a)(9) and commence equal monthly payments in the first full calendar month following the Effective Date (which month is anticipated as of the filing of this Plan to be May, 2022).

   The outstanding balance of the IRS priority claim shall accrue interest at the rate of Three Percent (3.00%) per annum on and after the Effective Date until paid in full.

   4.3.2. The Debtor recently cured various un-filed employment tax returns, and the Internal Revenue Service on March 21, 2022 amended Proof of Claim No. 4 to include a priority claim in the amount of $100,172.02 (and with a general unsecured claim in the amount of $2,627.64, for a total claim of $102,799.66).

4.3.3. *At the request of the Internal Revenue Service, the Debtor incorporates the following terms and conditions into the Plan.*

The debt owed by the Debtor to the Internal Revenue Service is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default.

A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month. If there is a default, the Internal Revenue Service must send a written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority.

The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

The Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan. The Debtor is required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service. If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement. The Internal Revenue Service must send a written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter. If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

<u>Internal Revenue Service remedies upon default:</u> Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

5. **TREATMENT OF CLAIMS AND INTERESTS.** The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

5.1. **Class 1 — Property Taxes / Ad Valorem Taxes**

    5.1.1. Identity of Claims in Class: Class 1 consists of the allowed secured claim of Dona Ana County, New Mexico or any other governmental entity that assesses ad valorem property taxes.

    5.1.2. Treatment:

        5.1.2.1. Each such tax authority will retain its statutory lien in, to, and/or against the Subject Property.

        5.1.2.2. Any ad valorem property taxes for 2021 if not already paid shall be paid upon the earlier of (1) within sixty (60) days of the Effective Date and/or (2) upon the closing of any sale or refinance of the Subject Property.

        The property taxes shall be pro-rated for any such portion that is sold, as applicable, and upon such payment(s) the liens of Dona Ana County will be deemed to be satisfied.

        5.1.2.3. Property taxes for 2022 shall be due and payable when due.

    5.1.3. **Voting**. Class 1 is unimpaired and deemed to accept the Plan.

5.2. **Class 2 — Legalist allowed secured claim.**

    5.2.1. Identity of Claims in Class: Class 2 consists of the allowed secured claim pursuant to the order entered by the Court on April 12, 2021 (Docket No. 43) (the "DIP Order") approving the Code § 364(d) debtor-in-possession financing and primary lien transaction between PDGP and Legalist (and which financing was used to extinguish the then existing first lien indebtedness owed to HD Lending, LLC). Capitalized terms in this Plan §5.2 shall have the same meaning as ascribed to such terms in the DIP Order unless otherwise defined herein.

    5.2.2. Treatment: The DIP Credit Agreement and the DIP Order shall remain in effect and govern the relations between the parties following the Effective Date, including but not limited to Legalist retaining all liens and/or other interests provided in the DIP Credit Agreement and/or DIP Order.

    5.2.3. **Voting**. Class 3 is unimpaired and deemed to accept the Plan.

5.3. **Class 3 — New Mexico Real Estate Advisors Inc. d/b/a Collier's International ("NMREA")**

    5.3.1. Identity of Claims in Class: Class 3 consists of the claim of NMREA for the second half of its commission under a pre-petition Exclusive Right to Lease Listing Agreement (the "*Listing Agreement*") between PDGP and NMREA, which NMREA asserts is earned and payable and PDGP asserts is contingent, disputed, and not yet due. NMREA asserts a

secured claim based upon one or more statutory liens that purport to encumber the Subject Property.

5.3.2. Treatment:

5.3.2.1. NMREA shall retain its liens to secure the contingent commission claim(s) that remain under the Listing Agreement with respect to sales and/or leases of the Subject Property; provided, however, the liens are each reduced by the payment(s) previously received through the closing of the Legalist DIP loan (see Docket No. 43). Within seven (7) days of the Effective Date, NMREA shall amend its recorded liens to reflect the previous paydown(s) under the order approving the Legalist DIP loan (see Docket No. 43).

5.3.2.2. Upon the closing of a sale of the Subject Property or any portion thereof, or upon an applicable tenant taking possession under the Listing Agreement, for which event(s) a commission becomes payable under the Listing Agreement, the Debtor shall pay at closing such commission, and NMREA shall release its liens asserted against the Subject Property, or portion of the Subject Property as applicable, that is sold and/or for which a tenant takes possession, as applicable.

5.3.2.3. Within the later of (i) thirty (30) days of the Effective Date or (ii) the closing of any refinancing or extension of the Legalist indebtedness, the Debtor shall deposit into escrow funds in accordance with the Order at Docket No. 43 less any amounts previously paid to NMREA under Section 5.3.2.2 above (the "*Escrowed Funds*") for use in satisfying the remaining commission that are or become payable to NMREA.

5.3.2.4. If and/or when any of the remaining commissions to NMREA mature, such commissions will be paid upon closing of any applicable sale and/or lease. Upon any such closing and payment, and in conjunction with such closing, NMREA will releas its liens asserted against the Subject Property or such portion thereof in relation to which NMREA is receiving payment.

5.3.2.5. NMERA and Debtor each reserves all rights, remedies, facts, claims, issues, and/or defenses with respect to the Escrowed Funds

5.3.2.6. NMREA shall continue to adhere to the confidentially provisions of the Listing Agreement between PDG-P and NMREA and/or related to the Subject Property.

5.3.3. If actions or events occur that under the terms of the Listing Agreement operate to nullify the contingency(ies) upon which the NMREA remaining commission is based and result in NMREA no longer being entitled to the balance of its commission, then NMREA shall be entitled to no claim and shall immediately release such portion of its liens to permit the other disposition to occur.

5.3.4. Effective upon the release by NMREA of all of its liens, the Debtor for itself and the bankruptcy estate releases NMREA and its agents, officers, directors, employees, agents, successors and assigns from any and all claims arising out of or relating to the listing agreement and the services provided thereunder. This Section 5.3.4 controls over any other

provision in the Plan, any plan supplement, the Disclosure Statement, and/or any other filing of the Debtor to the contrary.

5.3.5. The Bankruptcy Court shall retain jurisdiction over any dispute between NMREA and/or the Reorganized Debtor so long as this Bankruptcy Case remain pending.

5.3.6. If other dispositions of the Subject Property occur, by lease, sale, or otherwise, that operate to nullify the contingency(ies) upon which the NMREA contingency is based, then NMREA shall be entitled to no claim and shall immediately release such portion of its liens to permit the other disposition to occur.

5.3.7. <u>**Voting**</u>. Class 4 is impaired and is entitled to vote for or against the Plan.

5.4. **Class 4 — Dennis Crimmins ("Crimmins").**

5.4.1. <u>Identity of Claims in Class</u>: Crimmins is the Plaintiff with respect to the Crimmins Litigation that is referenced and described in the Disclosure Statement and the party which has filed a notice of lis pendens against the Subject Property. However, Crimmins has not filed a proof of claim in this case.

5.4.2. <u>Treatment</u>: This class was resolved by the disposition of the Crimmins Adversary as described in the Disclosure Statement. ***CRIMMINS HOLDS NO CLAIM OR INTEREST AND WILL RECEIVE NO DISTRIBUTION.***

5.5. **Class 5 — General Unsecured Claims.** General unsecured claims are not secured by property of the estate and are not entitled to priority under Code §507(a).

5.5.1. <u>Identity of Claims in Class</u>: As set forth in **Exhibit PDGP304** to the Disclosure Statement, the Class 5 general unsecured creditors consists of general unsecured claims in aggregate minimum amount of at least / approximately $32,250.00 and consisting of only the disputed claim of City Bay Capital LLC.

Since the Disclosure Statement, the IRS has amended its proof of claim to include a general unsecured claim in the amount of $2,627.64.

5.5.2. <u>Treatment — City Bay</u>: Upon the agreement of City Bay and the Debtor, PDG, Inc., Michael Dixson, and any and all subsidiaries and/or affiliates of Michael Dixson, as referenced and described in City Bay proof of claim, the Debtor will pay $20,000 to City Bay within thirty (30) days of the Effective Date of the Plan in full and final satisfaction of the claims of City Bay against any of the Debtor and/or the aforementioned parties.

*Mutual Releases*. Upon City Bay's receipt of the $20,000.00 payment from Debtor, City Bay, on its own behalf and on behalf of all of its current and former partners, employees, agents, entities, attorneys, predecessors, subsidiaries, parent companies, successors, beneficiaries, representatives, insurers, affiliates, heirs, executives, administrators, directors, officers, board members, members, shareholders, mortgagors, mortgagees, investors, creditors, debtors, and assigns, and each of their respective successors and assigns, and for anyone claiming by, through or under any of them (the "*City Bay Release Parties*"), unconditionally and irrevocably releases, remises, forgives, and forever discharges Debtor, PDG, Inc., and Michael Dixson, and all of their current and former partners, employees, agents, entities, attorneys, predecessors, subsidiaries, parent

companies, successors, beneficiaries, representatives, insurers, affiliates, heirs, executives, administrators, directors, officers, board members, members, shareholders, mortgagors, mortgagees, investors, creditors, debtors, and assigns, and each of their respective successors and assigns, and for anyone claiming by, through or under any of them (the "*Dixson Release Parties*"), from and against any and all obligations, actions, suits, causes of action, claims, counterclaims, demands, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, debts, sums of money, accounts, compensations, contracts, controversies, promises, covenants, judgments, losses, damages, costs, or expenses of any type, kind, nature, description, or character whatsoever, whether in law, admiralty, arbitration, equity, or otherwise, whether known or unknown, and whether accrued or hereafter maturing, from the beginning of the world to the date of this Agreement, relating to the Mortgage Brokerage Agreement, dated May 29, 2019 (the "*Brokerage Agreement*").

Upon City Bay's receipt of the $20,000.00 payment from Debtor, the Dixson Release Parties unconditionally and irrevocably releases, remises, forgives, and forever discharges the City Bay Release Parties from and against any and all obligations, actions, suits, causes of action, claims, counterclaims, demands, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, debts, sums of money, accounts, compensations, contracts, controversies, promises, covenants, judgments, losses, damages, costs, or expenses of any type, kind, nature, description, or character whatsoever, whether in law, admiralty, arbitration, equity, or otherwise, whether known or unknown, and whether accrued or hereafter maturing from the beginning of the world to the date of this Agreement, relating to the Brokerage Agreement.

*Non-Disparagement.* City Bay, on the one hand, and Debtor, PDG, Inc., and Michael Dixson, on the other hand, each agree that they will refrain from making any statement having or causing a diminishing effect on the reputation, goodwill, or business of the other party (including its current and former employees, officers, directors, agents, attorneys, owners, shareholders, divisions, affiliates, parents, subsidiaries, predecessors, successors, beneficiaries, heirs, and assigns), or which tortiously interferes with the contracts and relationships of the other party, relating to events, occurrences, or transactions taking place from the beginning of the world to the date hereof.

*Treatment- IRS.* The IRS unsecured claim shall be paid in full according to the same schedule as the IRS priority claim as set forth above, but shall not bear interest.

5.5.3. **Voting.** Class 5 is impaired and may vote for or against the Plan.

5.6. **Class 6 — Class of Equity Interest Holders.**

All prepetition equity interest owners shall retain their equity interests in the reorganized Debtor following the Effective Date.

6. **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

6.1. Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection or otherwise which is the subject of a pending contested matter, adversary proceeding and/or other contested matter; or (ii) no proof

    of claim has been filed, and/or (iii) the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.2.   **Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.3.   **Settlement of Disputed Claims.** After the Effective Date, the Debtor will have the power and authority to settle and compromise a disputed claim without court approval and without compliance with Bankruptcy Rule 9019.

**7.   PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1.   **Assumed Executory Contracts and Unexpired Leases.**

    The Debtor ***ASSUMES***

    (i) the Ground Lease Agreement dated November 8, 2019 between PDG Prestige, Inc., as landlord, and Bubba's Holdings LLC (f/k/a Strategic Restaurant Concepts, LLC) ("Bubba's Holdings"), as tenant, as amended January 22, 2020 (First Amendment), February 20, 2020 (Second Amendment), March 20, 2020 (Third Amendment), May 5, 2020 (Fourth Amendment), June 5, 2020 (Fifth Amendment), July 31, 2020 (Sixth Amendment), August 18, 2020 (Seventh Amendment), November 12, 2020 (Eighth Amendment), and March 2, 2022 (Ninth Amendment) (the "Bubba's Holdings Lease"), and

    (ii) any lease of nonresidential real property which the Debtor may assume and potentially assign upon a motion filed with the Court and notice provided to the non-debtor party(ies) within thirty (30) days of the Effective Date of this Plan.

**8.   MEANS OF IMPLEMENTING THE PLAN.**

8.1.   **Source of Payments.** Payments and distributions under the Plan will be funded by (1) a sale of the Subject Property, (2) lease and/or rental income of the Subject Property, and/or (3) existing financing and/or post-Effective Date re-financing.

    For the avoidance of doubt, the potential sale of Lot 1A to The Paul Rothbard Revocable Living Trust Dated August 23, 2006 ("Rothbard Trust") that was referenced and descried in the Disclosure Statement shall not occur because the Rothbard Trust withdrew the offer. Thus, each of Lot 1A and Lot 3A (the two (2) lots of the Subject Property) will be the subject of one or more sales post-Effective Date by the Reorganized Debtor.

    The Debtor has owned and will continue to own its member units in The Gateway Ventures LLC (which is the subject of Case No. 21-30071 in this Court), and any distribution on account of such interest shall be available as additional resources of the Debtor.

8.2.   **Post-confirmation Management.** The post-confirmation management of the Debtor, and the compensation for each such person is set forth in the Disclosure Statement and in TABLE 1.

8.3.   **Risk Factors.** The proposed Plan has the following risks: The Debtor potentially will be unable to complete the sale of the Subject Property in accordance with the development plan. The Debtor potentially will not generate sufficient cash flow to service the debts to be paid over time under the

Plan. The general economic uncertainty associated with the COVID-19 pandemic provides substantial additional risk.

9. **GENERAL PROVISIONS**

   9.1. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in Code §§101 and 102 shall apply when terms defined or construed in the Code. Other terms are defined throughout the Plan and/or the Disclosure Statement, and terms may be defined in the Disclosure Statement and then used in the Plan and vice versa. Any reference to the Debtor that applies to any period of time after the Effective Date shall refer to the Debtor as the Reorganized Debtor. In addition, the following terms used in the Plan and/or Disclosure Statement are defined below.

      9.1.1. [reserved].

   9.2. **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

   9.3. **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

   9.4. **Primacy of the Plan and Confirmation Order.** To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

   9.5. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

   9.6. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

   9.7. **Corporate Governance.** After the Effective Date of the order confirming the Plan, the management of the Debtor will consist of the following: Michael Dixson, President, Director and Manager (compensation $200,000 per year, if funds available).

   9.8. **Corporate Authority.** All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further approval, notice or meetings, that might otherwise be required under applicable state law or otherwise, other than the notice provided by serving this Plan on all known creditors of PDGP, all interest holders, and all current directors or managers o of PDGP.

   9.9. **Sales of Property.** Any sales, transfers, and/or conveyances of some or all of the Subject Property shall be made pursuant to, at minimum, constitutes sales under Code §§ 363(f), 1122(a)(5), and/or 1125(b)(4), and each such sale, transfer, and/or conveyance shall be free and clear and any lien, claims, encumbrances, and/or any other interests, except as specified above with respect to particular Lots and/or particular conveyances and except any interest of Bubba's Holdings in and to the Subject Property (Lot 1A) pursuant to the Bubba's Holdings Lease, to which any sale, transfer and/or conveyance of Lot 1A will be subject.. *See also* Plan §§ 8 and 10.

9.10. **Fixing of Claims.** To the extent that the modification and/or fixing of any claim occurs under the Plan, the Plan also constitutes an objection to any filed proof of claim and/or scheduled claim under Code §502 and/or Bankruptcy Rules 3007 and 9014, and any applicable Local Rules.

9.11. **Settlement of Claims and Disputes.** The Plan also constitutes a motion under Bankruptcy Rule 9019 to the extent necessary to confirm the Plan.

9.12. **Debtor name change.** The Debtor may change its name and/or adopt one or more business aliases after the Effective Date.

## 10. EFFECT OF CONFIRMATION OF PLAN, DISCHARGE

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in Code §1141(d)(1)(A) except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence. All property of the Debtor shall be conveyed to the Reorganized Debtor free and clear and any liens, claims, encumbrances and/or other interests unless otherwise specified herein.

For the avoidance of doubt, and without contradiction of any portion of the Code, upon the Effective Date, all property of the estate, including but not limited to any and all real property of the Debtor in Dona Ana County, New Mexico and further including without limitation each of Lot 1A and Lot 3A of the Subject Property, shall vest and/or return to Reorganized Debtor, and which property the Reorganized Debtor shall be free to sell, lease, encumber, and otherwise transact and/or use in any manner without the necessity of further notice to any creditors and/or parties in interest and without the necessity of prior approval of the Bankruptcy Court.

## 11. EFFECTIVE DATE OF PLAN.

The effective date of this Plan (the "Effective Date") is the first business day following the entry of the Order confirming this Plan. The Effective Date will be fixed in the Confirmation Order.

## 12. FINAL DECREE

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## 13. OTHER PLAN PROVISIONS

13.1. **Scope and Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to: *(i)* hear and determine pending applications for the assumption or rejection of contracts or leases and the allowance of Claims resulting therefrom; *(ii)* hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, and including any Estate Actions; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise as to the settlement or compromise of any Estate Actions post-Effective Date; *(iii)* ensure that distributions to holders of Allowed Claims are accomplished as provided herein; *(iv)* hear and determine any timely objections

to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or Interest, and to enter Estimation Orders; *(v)* hear and determine all Fee Applications and Fee Claims; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under section Code §330 or otherwise as to the allowance or payment of professional fees post-Effective Date; *(vi)* enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated; *(vii)* hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan; *(viii)* enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder; *(ix)* consider any modification of the Plan pursuant to Code § 1127, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; *(x)* enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order; *(xi)* recover all assets of the Debtor and property of the estate, wherever located; *(xii)* hear and determine matters concerning state, local, and federal taxes in accordance with Code §§ 346, 505, and 1146; *(xiii)* hear and determine any other matter not inconsistent with the Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and enter a final decree closing the Bankruptcy Case.

13.2. **Avoidance actions and retained litigation.**

    13.2.1. Post-confirmation litigation and the prosecution of avoidance actions and/or other estate claims are referenced and described in the Disclosure Statement and/or one or more plan supplements, including but not limited to the plan supplement on file at Docket No. 126. The claims and causes of action so described are expressly retained for the benefit of the estate and/or the Reorganized Debtor.

    13.2.2. In addition, and for the avoidance of any potential doubt, the claims and/or causes of action that are retained for this Debtor and/or the Reorganized Debtor include any and all facts, claims, issues, rights, remedies, and/or defenses relating in any way to PDG Prestige Inc. on the one hand and Suresh Kumar and/or Bankim Bhatt on the other and relating in any way to:

        (1) any aspect of the raising of funds, financial contributions, and/or financing of any type in connection with the proposed and/or actual acquisition of the 20-acre tract of property that ultimately was acquired by The Gateway Venture LLC and which property is commonly referred to as 6767 W. Gateway Blvd., El Paso, Texas 79925 and 1122 Airway Blvd., El Paso, TX 79925 (and which property is identified through the proceedings in Case No. 21-30071),

        (2) otherwise relating to any of facts, claims, issues, rights, remedies, and/or defenses described in or otherwise relating to the facts and occurrences described in the various pleadings of any and all parties currently on file in Adversary Proceeding No. 21-03009;

        (3) otherwise relating to any of facts, claims, issues, rights, remedies, and/or defenses described in or otherwise relating to the facts and occurrences described in the various pleadings of The Gateway Ventures, LLC currently on file in Adversary Proceeding No. 21-03009; and/or

      (4)  and any facts, claims, issues, rights, remedies, and/or defenses which may be asserted by PDG Prestige, Inc. (as Debtor or Reorganized Debtor) in Adversary Proceeding No. 21-03009 under one or amended pleadings under the applicable scheduling order(s) in Adversary Proceeding No. 21-03009.

13.3. **U.S. Trustee Fees and Reports.** The reorganized PDGP shall (1) file all operating applicable reports as required and (2) timely pay all quarterly fees assessed after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this case or enters an order either converting this case to a case under Chapter 7 or dismisses the case. The Debtor and/or Reorganized Debtor as applicable shall remain current in the filing of monthly operating reports and/or quarterly operating reports, as applicable.

13.4. **Assets after any subsequent conversion.** In the event of a conversion of this case to Chapter 7 any time after the confirmation of this Plan, the assets of the Debtor shall re-vest to the bankruptcy estate of the Debtor upon such conversion.

*{continued on following page}*

                                                **PDG PRESTIGE, INC.**

                                         /s/ Michael Dixson
                                         **By: Michael Dixson, President**

Jeff Carruth (SBT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(713) 341-1158, fax (866) 666-5322
jcarruth@wkpz.com
ATTORNEYS FOR PDG PRESTIGE INC.
DEBTOR AND DEBTOR IN POSSESSION