**The relief described hereinbelow is SO ORDERED.**

**Signed October 19, 2022.**

_____
Ronald B. King
**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PDG PRESTIGE INC., | § | Case No. 21-30107 |
| | § | |
| Debtor. | § | |

**ORDER (I) WITHDRAWING WITHOUT PREJUDICE MOTION OF LEGALIST DIP GP, LLC FOR ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B) (RE: DOCKET NO. 166) AND (II) GRANTING JOINT MOTION TO APPROVE STIPULATION BETWEEN DEBTOR AND LEGALIST (RE: DOCKET NO. 185)**

On October 18, 2022, the Court conducted a hearing regarding (i) the *Motion of Legalist DIP GP, LLC for Order Converting Chapter 11 Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 166) (the "***Motion to Convert***") filed herein on September 20, 2022 by Legalist DIP GP, LLC, on behalf of Legalist DIP Fund I, LP and Legalist DIP SPV II, LP (collectively,

"*Legalist*") and (ii) the *Joint Motion to Approve Stipulation Between Debtor and Legalist* and *Withdrawing Motion to Convert Without Prejudice* (Docket No. 185) (the "*Motion to Approve*") filed herein on October 14, 2022 by Legalist and PDG Prestige Inc. ("*PDPG*" or the "*Debtor*").

In light of the agreement of Legalist and PDPG as represented on the record and in the Stipulation (attached to the Motion to Approve and hereto as Exhibit PDPG903), and the review by the Court of the Stipulation the Court is of the opinion that the following Order should be entered.

**IT IS THEREFORE ORDERED THAT:**

1.  Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the Motion to Convert and/or the Motion to Approve, as applicable.

2.  The Motion to Convert is hereby withdrawn without prejudice to refiling.

3.  The Motion to Approve is hereby granted and the Stipulation, which is attached to this Order, is hereby approved in all respects and the Stipulation is fully enforceable upon entry of this Order.

### END OF ORDER ###

**APPROVED:**

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:___*/s/ Jeff Carruth*_____
    JEFF CARRUTH (TX SBN:. 24001846)
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76105
    Telephone: (713) 341-1158
    E-mail:  jcarruth@wkpz.com

ATTORNEYS FOR PDG PRESTIGE INC.
REORGANIZED DEBTOR

- and -

BELL NUNNALLY & MARTIN LLP

By: */s/ Russell W. Mills*_____
    Russell W. Mills
    Texas Bar No. 00784609

    2323 Ross Avenue, Suite 1900
    Dallas, Texas 75201
    214-740-1400 Telephone
    214-740-1499 Facsimile
    rmills@bellnunnally.com
ATTORNEYS FOR LEGALIST DIP GP, LLC, AS
GENERAL PARTNER OF LEGALIST DIP FUND I,
LP AND LEGALIST DIP SPV II, LP
* Signature by permission by /s/ Jeff Carruth

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

**Exhibit PDGP903**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| PDG PRESTIGE, INC. | § | Case No. 21-30107 |
| | § | |
| Debtor. | § | |

## SO-ORDERED STIPULATION OF SETTLEMENT

This Stipulation of Settlement (this "**Stipulation**") is entered into as of October __, 2022, by and among (i) PDG Prestige, Inc., a Texas corporation (the "**Borrower**" and/or the "**Debtor**"), and (ii) certain investment funds for which Legalist DIP GP, LLC serves as general partner (as lender, agent, and collateral agent, the "**DIP Lender**" or "**Lender**"). Each of the Debtor and the Lender are sometimes referred to herein individually as a "**Party**," and the Debtor and the Lender are sometimes collectively referred to herein as the "**Parties**".

**WHEREAS,** Debtor is a real estate development enterprise that owned as of the Petition Date a ± 3.29 acre tract of unimproved real property in Las Cruces, Dona Ana County, New Mexico sometimes referred to as Mesilla Valley Mall Subdivision Replat No. 5, and located 510 and 550 S. Telshor Blvd., Las Cruces, New Mexico 88011, which tract was reduced by the sale of Lot 1A on or about May 31, 2022, as more fully described on **Exhibit A** hereto (the "**Premises**");

**WHEREAS,** Dixson is President of Debtor and has managed, and will continue to manage, all of the operations of Debtor at all times contemplated herein;

**WHEREAS,** on February 15, 2021, Debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas (the "**Bankruptcy Court**"), which commenced a bankruptcy case bearing Case Number 21-30107 (HCM) (the "**Bankruptcy Case**");

**WHEREAS,** on March 26, 2021, Debtor filed the *Motion of Debtor to (I) Enter Into Debtor Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(D), and (III) Provide Related Relief requesting that the Court permit it to obtain a debtor-in-possession loan under Code § 364(d)* (the "**Loan**"). (ECF No. 24).

**WHEREAS,** on April 12, 2021, the Bankruptcy Court entered that *Final Order Granting Motion of Debtor to (I) Enter Into Debtor Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(D), and (III) Provide Related Relief* (ECF No. 43) (the "**DIP Order**"), authorizing Debtor to obtain, from Lender, post-petition financing, consisting of senior superpriority term loans in an aggregate maximum amount of $4,700,000.00. (ECF No. 43). A true and correct copy of the DIP Order is attached as **Exhibit B** and incorporated herein by reference.

1

**WHEREAS,** on April 12, 2021, Lender and Debtor entered into that certain *Debtor-In-Possession Term Loan Credit Agreement* (the "**Agreement**"), pursuant to which Lender agreed to extend DIP Loans up to an aggregate maximum amount of $4,700,000.00 (the "**DIP Commitment**").

**WHEREAS,** the Lender loaned to the Debtor the principal amount of $4,700,000.00 (the "**DIP Loan**").

**WHEREAS,** on March 31, 2022, the Debtor filed its *Second Amended Plan of Reorganization of PDG Prestige Inc. dated March 29, 2022, as Modified* (ECF No. 145) (the "**Plan.**").

**WHEREAS,** on March 31, 2022, the Bankruptcy Court entered the *Order Confirming Second Amended Plan of Reorganization PDG Prestige, Inc. Dated March 29, 2022 as Modified* (ECF No. 148) (the "**Order Confirming Plan**") in which it confirmed the Plan.

**WHEREAS,** the DIP Loan matured by its terms on June 24, 2022, at which time the full balance of the principal, plus all interest, fees, costs and other charges as set forth in the Agreement became due and owing.

**WHEREAS,** despite notice and demand, Debtor has failed to repay the DIP Loan, which, as of the date hereof, now exceeds the sum of $5,959,710.00 (the "**Stated Default**").

**WHEREAS,** Lender is currently entitled to exercise any and all of its rights and remedies under the Agreement.

**WHEREAS,** the Parties have reached a settlement with respect to the amounts owed under the Agreement, the administration of the Debtor's Bankruptcy Case and other matters as set forth herein;

**NOW, THEREFORE,** in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Stipulation.

2.      Administration of the Debtor's Bankruptcy Case.

(a)Debtor hereby represents and warrants that it is actively seeking to obtain a new post-petition loan (the "**Exit Loan**"), which Exit Loan will be in an amount sufficient to pay Lender the amounts owed to Lender in full for the highest of the Stated Default, Allowed Claim, and DIP Obligations, as well as amounts which may accrue pursuant to the terms of the Agreement on or before Friday, November 4, 2022. Debtor hereby represents and warrants that it shall not seek

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

any Exit Loan unless upon the closing of such loan Lender has received full payment of Lender's Allowed Claim (as defined below) through the date of payment.

(b)If Lender has not received payment on account of the Allowed Claim of Lender in full by Friday, November 4, 2022, then:

> i)Debtor shall retain a commercial real estate broker licensed in the state of the Premises and reasonably acceptable to Lender to sell the Premises (an "**Acceptable Broker**") on terms consistent with this Stipulation. Debtor shall present the Acceptable Broker and proposed listing agreement with said Acceptable Broker to Lender on or before 1 p.m. Central Time, November 8, 2022 for Lender's prior written approval. The Broker shall conduct such auction, which auction shall be held not later than December 15, 2022. The parties agree to use the platform Ten-X to auction the property with a closing date no later than January 13, 2023.

> ii)Debtor shall not later than November 10, 2022 file (a) a motion to retain the Acceptable Broker approved by Lender, and (b) a motion to: (i) sell the Premises at an auction sale pursuant to Section 363 of the Bankruptcy Code, and (ii) conduct such auction, which auction shall be held not later than December 15, 2022 (the "**Section 363 Motion**"). The terms of sale with respect to the auction (or any stalking horse contract) shall be in a form acceptable to Lender and require, among other things: (i) that the closing by the stalking horse or winning purchaser occur not later than Friday, January 13, 2023, and (ii) that the purchase price for the Premises be paid all in cash at closing. Debtor will not enter into a contract of sale for the Premises without Lender's consent, which consent may be withheld and conditioned by Lender as Lender deems commercially reasonable to secure repayment of the Obligations. For the avoidance of doubt, the auction will be held not later than December 15, 2022 even if a stalking horse bidder has not been obtained (unless Lender hereafter expressly agrees in writing otherwise).

(c)Lender may credit bid up to the full amount of its Allowed Claim at any sale of the Premises, whether under Section 363 or otherwise.

(d)Debtor hereby acknowledges and agrees that:

> (i)Lender has a valid and allowed claim against the Debtor estimated to be as of Friday, October 14, 2022 in the sum of **$5,959,710.87**[1] (the "**Allowed Claim**");Lender has a valid and allowed claim against the Debtor estimated to be as of Friday, January 13, 2023 in the sum of **$6,221,356.85** (the "**Allowed Claim**");

> (ii)if Lender's actual attorneys' fees and expenses for the period from October 3, 2022 through Friday, January 13, 2023 are higher than the estimated amount of fees and expenses for such period that were included in the Allowed Claim, then the Lender shall be entitled to be paid the actual amount of its attorneys' fees and expenses incurred during the period

---

[1] Legal fees and protective advances are reflected herein only as of September 30, 2022. Additional legal fees and expenses have accrued and continue to accrue after October 1, 2022 and such additional amounts are owed under the Loan Documents and shall be added to the Allowed Claim (as defined hereinabove).

from October 3, 2022 through Friday, January 13, 2023, and such amount shall be part of, and added to, the Allowed Claim;

(iii)the Allowed Claim continues to accrue interest at the Default Interest rate under Section 2.04 of the Agreement (the **"Default Interest Rate"**), and Lender shall be entitled to all protective advances, reasonable attorneys' fees and expenses, and such other sums provided for in the Agreement on and after Friday, January 13, 2023, together with interest thereon, and such sums shall be part of and added to the Allowed Claim;

(iv)Lender's Allowed Claim is secured by a valid (x) first priority and unavoidable mortgage lien on the Premises (and all other collateral described in the Agreement), and (y) first priority and unavoidable security interest in all other collateral described in the Agreement; and,

(v)the Allowed Claim is hereby forever allowed and shall not be subject to any reduction, setoff, objection, or challenge.

(e)Debtor shall not enter into any lease, contract, or other agreement for the sale, lease, or use of the Premises, or any part thereof, without Lender's prior written consent and unless (i) the contract is for the sale of all of the Premises, and contains a 7 % non-refundable deposit to be held in escrow by the Debtor's counsel pending a closing (ii) the sale price of the Premises, after deducting Debtor's costs (e.g. attorneys' fees, auctioneers fees, taxes, escrow fees, brokerage commissions, etc.) is sufficient pay 100% of the amount of Lender's Allowed Claim, (iii) the closing of the sale must be set for a date that is not later than Friday, January 13, 2023, time being of the essence, and (iv) the obligation of the buyer to close is not subject to any contingencies whatsoever, including, without limitation, as to financing, zoning, development or any other matter of any kind.

(f)Debtor and its counsel shall use best efforts to timely and fully cooperate with Lender in connection with all matters related to the sale of the Premises, including, without limitation, (i) providing information about the Premises, (ii) providing access, on 48 hours' notice, at all times and from time to time, to the Premises to any brokers, the Lender, any prospective purchaser of the Premises, and all agents and representatives of all of the foregoing.

(g)[intentionally deleted].

3.    Interest Rate; Allowed Claim; Financial Statements.

(a)    Interest shall continue to accrue on the Allowed Claim at the Default Interest Rate as provided in the Agreement until the date that the Debtor has indefeasibly paid and satisfied all of its obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under the Agreement and this Stipulation.

(b)    Debtor shall, within two (2) business days', deliver to the Lender any and all financial information that the Lender may request, including, without limitation: (i) a current rent roll for Premises; (ii) copies of all leases for the Premises; (iii) copies of all contracts for the sale of the Premises, if any; and (iv) proof of insurance of the Premises.

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

4. <u>Application of Payments</u> and <u>Payments to the Lender By Wire Transfer</u>. All payments to Lender shall be made by wire transfer pursuant to such wire transfer instructions as Lender shall provide to the Debtor's counsel upon request therefore. Any payments to Lender on or after the date hereof may be accepted by Lender and applied against the obligations owed under the Agreement, including but not limited to the DIP Obligations, in such manner as Lender may hereafter determine from time to time, all in Lender's sole and absolute discretion.

5. <u>No Reinstatement of any Loan</u>. Neither Lender's acceptance of any payment made by the Debtor on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Agreement, shall constitute or be construed as a waiver by Lender of: (i) the Default or any other breach or default under the Agreement or this Stipulation; nor (ii) any of Lender's rights or remedies in connection with the Agreement or this Stipulation.

6. <u>Consideration</u>. In additional consideration to Lender, and to induce Lender to enter into this Stipulation:

(a) Debtor agrees to execute and deliver to Lender a Deed of Trust on the Premises in the form attached hereto as **Exhibit C** (the "**Deed of Trust**");

(b) Debtor authorizes Lender to file the Deed of Trust in the real property records of the county in which the Premises are located;

(c) Debtor acknowledges that Lender shall have, in addition to its other rights and remedies, the right to non-judicially foreclose on the Premises as set forth in the Deed of Trust should the Debtor default under the Agreement or this Stipulation; and,

(d) As additional consideration for entering into this Stipulation, the Debtor hereby consents to relief from any injunctions contained in the Plan, and the automatic stay imposed in this case pursuant to 11 U.S.C. § 362(a), which, to the extent such stay is in place, shall be, and is hereby terminated pursuant to 11 U.S.C. § 362(d)(1) to permit Lender, its successors and/or assigns, to exercise all rights available to it under applicable law with respect to the Property, and to permit the Lender, its successors and/or assigns, to take any other legal action necessary to enforce its rights in connection with the underlying Agreement and this Stipulation, whether at law or in equity. The Debtor also consents to a waiver of any stay imposed by Federal Bankruptcy Rule 4001(a)(3).

7. <u>Representations and Warranties</u>. In order to induce Lender to enter into this Stipulation, and in additional consideration thereof, Debtor hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Stipulation:

(a) **Binding Obligations**. The Agreement and this Stipulation have been duly executed and delivered by the Debtor and constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their respective terms.

(b) **No Defenses or Claims**.

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

(i) Lender has provided all notices of default required under the Agreement and is now fully entitled to foreclose on any and/or all of its collateral and otherwise exercise all of its rights and remedies on account of the defaults under the Agreement; (v) all amounts owed to Lender under the Agreement are now due and payable; (w) there are no defenses, offsets, or counterclaims of any nature whatsoever to the Agreement or the Lender's status as the due holder of the Agreement, or the Lender's standing to enforce all of the foregoing; (x) the Agreement is hereby reaffirmed by the in its entirety; and (y) the Agreement is in full force and effect and Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity by virtue of this Stipulation.

(ii) None of the equity interest holders of the Debtor has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of; based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Stipulation or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant to, or relating to, or by virtue of the subject Loan or any of the terms of any of the Agreement; and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

(c)     **Maturity of the Agreement and Default**. Pursuant to the express terms of the Agreement the entire principal balance together with all other amounts payable under the Agreement, were immediately due and payable on June 24, 2022, and Debtor has failed to pay such obligations as of such date and the date hereof. Debtor is in default under the Agreement as a result of Debtor's failure to pay all other amounts payable under the Agreement.

(d)     **Representations in Loan Documents**. All of the representations and warranties made by the Debtor in the Agreement, and in connection with the Debtor's inducing the Lender to make the subject Loan, are true and correct in all material respects as if made on the date hereof except as otherwise set forth herein.

(e)     **Insurance Policies**. Insurance policies complying with the terms of the Agreement are in full force and effect and Debtor shall provide a copy of its insurance policy, along with proof of payment, evidence that Lender is an additional insured, and proof of insurance within 48 hours of (i) execution by Debtor of this Stipulation, and (ii) any request by the Lender.

(f)     **Taxes**. All taxes, including, but not limited to, ad valorem taxes on the Premises, Debtor's personal property, income and franchise taxes, are paid in full as of the date hereof, and Debtor shall promptly pay all such taxes as the same become due and payable and before incurring late fees, fines or additional assessments.

6

(g)     **Leases/Premises Encumbrances**. There are no leases or licenses to use any part of the Premises other than the following leases (the "**Stated Leases**"):

> That certain Commercial Lease dated as of January 21, 2022 between Debtor, as landlord, and Signet Jewelers for 2,400 square feet;

> That certain Commercial Lease dated as of March 3, 3031 between Debtor and Aspen Dental Management, Inc. for 3,500 square feet;

> That certain Commercial Lease dated as of September 9, 2019 between Debtor and Select Comfort Retail, Inc. for 3,000 square feet; and

> That certain Commercial Lease dated as of September 22, 2020 between Debtor and Big Toasted Mon, LLC for 2,200 square feet with 500 square feet of patio space

Each of the Stated Leases has expired and will require an amendment between the parties to reinstate the Stated Lease, and the reinstatement of each Stated Lease may force or cause the Debtor to incur additional expenses not previously disclosed under the prior terms of the Stated Leases.

(i) Debtor shall not in any way whatsoever modify, amend, extend or renew any of the Stated Leases without the Lender's express prior written consent, and any modification, amendment, extension or renewal of any of the Stated Leases without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever; and,

(ii) Debtor shall not enter into any new agreement of any kind or nature concerning the lease, license, use, or sale of the Premises, or any part thereof, without the Lender's express prior written consent, and any such agreement entered into by the Debtor without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever.

(h)     **Compliance with Laws**. Debtor, to the best of its knowledge: (i) is in compliance with all material laws, ordinances, rules, and regulations of all governmental entities (and all agencies, bodies and subdivisions thereof) affecting the ownership, use, or operation of the Premises, and (ii) has not received any notice of noncompliance from any such governmental entity with respect to the Premises, or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

(i)     **No Breach of Other Agreements**. To the best knowledge of Debtor, neither the execution or delivery of this Stipulation, nor the consummation of the transactions contemplated by this Stipulation, nor the compliance with the terms and provisions hereof will: (i) constitute or result in a breach of any of any the Debtor's respective organizational documents or shareholder agreement, nor will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to the Debtor; (ii) conflict or will be inconsistent with, or

2237952.DOCX 2237952.DOCX[1]
pdf 2238650

will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; nor (iii) constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which the Debtor may be bound or subject.

(j)    **Debtor Benefitted**. Debtor has derived direct and substantial benefit from this Stipulation and the transactions contemplated by this Stipulation.

(k)    **Other Documents**. All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by, or on behalf of, Debtor in connection with the transactions contemplated by this Stipulation: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

(l)    **Condition Precedent**. The continued validity in all respects of all representations and warranties made by (i) the Debtor in the Agreement, and (ii) the Debtor in this Stipulation and any other documents delivered by, or on behalf of, Debtor in connection with this Stipulation constitute a condition precedent to the Lender's agreements hereunder, including without limitation, Debtor's obligations in Sections 7(e) and 6(a) hereinabove.

(m)   **Stipulation Is Duly Executed and Enforceable**. The signatories, on behalf of the Debtor, to this Stipulation, have full and complete authorization and power to execute and deliver this Stipulation in the capacity herein stated. This Stipulation is a valid, binding and enforceable obligation of the Debtor and does not violate any law, rule or regulation, or any contract or agreement to which a Debtor is a party. Debtor has not conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Stipulation.

8.    Defaults.  The occurrence of any one or more of the following shall constitute a "default" under this Stipulation and the Agreement:

(a) **Failure to Perform Obligations**. The failure of the Debtor to observe or perform any of its respective obligations under this Stipulation and/or the Agreement as and when due, time being of the essence;

(b) **Misrepresentation**. If any representation or warranty made herein, or in any report, certificate, financial statement, or other instrument or document furnished in connection with this Stipulation or contemplated hereby, shall prove to have been knowingly and materially false or misleading on the date as of which it was made;

(c) **Judgment**. Entry of a judgment or filing of a lien after the date hereof against the Debtor, the Premises, or any other property of any of the Debtor; or,

(d) **Failure to Maintain Insurance**. If at any time (i) Debtor fails to maintain insurance on the Premises, or (ii) such insurance fails to include the Lender as an additional insured or fails to provide that the Lender is the sole loss payee.

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

9. <u>Amendments</u>. This Stipulation may be amended only by a written amendment, fully executed and delivered by each of the Parties. Technical, not material, amendments may be entered without further notice to any party external to this Agreement and without further order of the Court.

10. <u>Remedies</u>. Without limiting the rights and remedies of Lender under the Agreement or applicable law, immediately upon the occurrence of any default hereunder, the obligations and agreements of Lender under this Stipulation shall terminate, and Lender shall have the right to exercise any and all rights and remedies available to it hereunder, under the Agreement and/or any other documents or instruments in its possession, and under applicable law to the same extent as though this Stipulation had not been executed, without regard to any notice or cure period contained therein or otherwise available. All rights and remedies available to Lender under this Stipulation, any of the other document or instrument and applicable law may be asserted concurrently, cumulatively, or successively, from time to time, as long as any indebtedness or obligations under the Agreement shall remain unpaid or outstanding. Furthermore, following a default hereunder, the Debtor further consents, authorizes and empowers Lender to take any and all actions necessary to effectuate the Debtor's obligations, which include, but are not limited to, as set forth in Section 2 hereinabove, in its stead.

11. <u>Agreement Still in Force</u>. Notwithstanding anything to the contrary in this Stipulation, the Agreement remains in full force and effect in accordance with its respective terms, remains valid and binding obligations of Debtor and has not been modified or amended, and is hereby reaffirmed and ratified by Debtor in all respects. The liens, security interests and pledges created by the Agreement, and are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

12. <u>No Waiver of Rights Under Agreement</u>. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Stipulation), nor any provision of this Stipulation, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice Lender's rights and remedies under the Agreement (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges), nor (b) affect the priority of the Lender's security interests in and liens on of any the property of Debtor, including, without limitations, the Lender's first priority mortgage lien on the Premises pursuant to the Deed of Trust and the Lender's first priority security interest and lien on all of the equity interests in the Debtor. Nothing contained in this Stipulation shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy Lender may have under the Agreement, nor constitute a cure of the Stated Default nor any other existing default, nor serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

13. <u>Claims:</u>

(a)**Release of Claims**. The Debtor, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Debtor being collectively referred to herein as the "**Other Releasors**"), does hereby

release, discharge and acquit Lender, and Lender's past, present and future officers, directors, shareholders, agents, employees, attorneys, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation by the Debtor (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (i) the Loan or the administration of any or all of the Loan or the Agreement, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof the enforcement thereof; (ii) any or all of the transactions which are the subject of or contemplated by any or all of the Agreement; (iii) the Premises and/or any other collateral granted under the Loan; (iv) any fact, matter or transaction existing or occurring as of or prior to the execution of this Stipulation by the Parties, which in any way, directly or indirectly, relates to the Loan, the Agreement, the Premises; or (v) any and all claims that could be asserted in the Bankruptcy Case.

(b) **Waiver**. Debtor hereby: (i) waives any and all defenses to Lender's exercise of any or all of its rights under the Agreement, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that Debtor is not in default under the Agreement, or any claim that any notice was not given by the Lender, or that the Agreement fully matured; and (ii) acknowledges and re-affirms its due execution and delivery of the Agreement.

(c) **Waivers of Unknown Claims**. As to all matters being released by the Debtor pursuant to the provisions hereof, the Debtor for itself, expressly acknowledges that the release of Claims set forth in this Section 12 hereof applies to all Claims whether or not known to, or suspected by the Debtor to exist. The Debtor, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in this Section is executed may hereafter be found to be different from the facts now believed by the Debtor to be true, and the Debtor, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

(d) **No Assignment**. The Debtor, for itself and on behalf of all Other Releasors, warrant and represent to the Lender that the Debtor has not sold, assigned, transferred, conveyed or otherwise disposed of any Claims which are the subject of this Section 12.14.

14. <u>Termination</u>. The Lender's agreement to forbear under the terms of this Stipulation shall automatically terminate, without any notice, any further act or otherwise, upon the earliest to occur of any of the following events:

10

(a)January 14, 2023;

(b)A Default (as such term is defined in Section 8); or,

(c)Lender hereafter becomes aware of any fact or circumstance that Lender believes in good faith is reasonably likely to impair any of Lender's collateral under the Stipulation or the Agreement, including, without limitation, its first priority liens on all of the Property.

15.<u>Miscellaneous</u>:

(a)**No Admission of Liability**. Nothing contained in this Stipulation, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

(b)**Costs and Expenses**. Nothing in this Stipulation shall (i) diminish or otherwise limit any obligation that the Debtor has under the Agreement with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent Lender from requiring the Debtor to pay all such costs and expenses in accordance with the terms of the Agreement.

(c)**Further Instruments**. The Debtor shall, whenever and as often as it shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation.

(d)**Written Waiver Only**. No waiver by Lender of any of its rights or remedies in connection with the Agreement shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by Lender in exercising or enforcing any of its rights and remedies in connection with the Agreement constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Defaults or any other breach or default under the Agreement; or (ii) any of Lender's rights or remedies in connection with the Agreement.

(e)**Third Party Beneficiaries**. Nothing in this Stipulation is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Stipulation and the Agreement, their respective successors and assigns.

(f)**No Offsets**. No indebtedness evidenced by the Agreement shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which the Debtor now has or may hereafter acquire or allege to have acquired against Lender.

(g)**Relationship of Parties**. Nothing contained in this Stipulation or the Agreement constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between Lender, on the one hand, and the Debtor and/or any other person or entity affiliated with the Debtor on the other hand. The Debtor acknowledge and agree that Lender has at all times acted

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

and shall at all times continue to be acting only as a lender to the Debtor within the normal and usual scope of activities of a lender.

(h)**Attorneys' Fees**. Upon demand therefor by the Lender, the Debtor shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or hereafter incurred by the Lender (i) in negotiating and preparing this Stipulation; and (ii) in administering, enforcing, or effectuating any of the terms of this Stipulation and the Agreement, whether or not any legal proceedings are instituted by the Lender. Without limiting the generality of the immediately preceding sentence, such costs and expenses shall include all attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or against the Debtor which in any way relates to or affects the Lender's exercise of its rights and remedies under the Agreement. The amount of any attorneys' fees, costs and expenses of the Lender that are not paid by the Debtor shall be added to the Allowed Claim, shall constitute secured obligations of the Debtor under the Agreement and shall bear interest at the default rate under the Agreement.

(i)**Descriptive Headings; Interpretation**. The headings to sections of this Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan Documents" shall be deemed to include, without limitation; (iii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort of the Parties and, therefore, shall not be construed against any of the Parties as the person who prepared or drafted this Stipulation.

(j)**Entire Agreement**. This Stipulation and the other Loan Documents contain the entire agreement and understanding between the Parties concerning the matters covered by this Stipulation and the other Loan Documents, and supersede all prior and contemporaneous agreements, statements, understandings, terms, conditions, negotiations, representations and warranties, whether written or oral, made by the Lender or the Debtor concerning the matters covered by this Stipulation and the Agreement.

(k)**TIME OF THE ESSENCE. TIME IS OF THE ESSENCE WITH RESPECT TO EACH OF THE DEBTOR'S OBLIGATIONS HEREUNDER.**

(l)**Severability**. If any term or provision of this Stipulation or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Stipulation, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Stipulation shall be valid and shall be enforced to the fullest extent permitted by law.

(m)**Notices**. All notices and other communications provided for in this Stipulation shall be in writing and shall be given by electronic mail:

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

<u>If to the Lender, at:</u>Legalist DIP Fund I, LP
c/o Legalist, Inc.
195 Hwy. 50, No 7172-210
Stateline, NV 89449
dip@legalist.com

with a copy to:Bell Nunnally & Martin LLP
2323 Ross Ave., Suite 1900
Dallas, Texas 75201
Attn: Russell Mills
rmills@bellnunnally.com

<u>If to the Debtor, at:</u>PDG PRESTIGE, INC.
2921 E 17th Street
Unit B
Austin, TX, US, 78702
Attn: Michael Dixson
mike@pdgnm.com

With a copy to:Weycer, Kaplan, Pulaski & Zuber, P.C.
Attn: Jeff Carruth
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
jcarruth@wkpz.com

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

(n)**Service of Process**. The Debtor hereby irrevocably agrees that service of process of any action or proceeding by the Lender against Dixson and/or any other Obligor Related Parties may be served upon Dixson or such Obligor Related Party by first class mail addressed to "_____" and the Obligor Related Parties hereby irrevocably waive any objection or defense whatsoever that any service of process so effectuated is invalid or improper in any manner. The foregoing is without prejudice to the Lender's rights to effectuate service of process by any other means allowed by applicable law.

(o)**Counterparts, Etc.** This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

(p) **WAIVER OF JURY TRIAL. THE DEBTOR AND THE LENDER IRREVOCABLY WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY ACTION, SUIT,**

2237952.DOCX 2237952.DOCX[1]
pdf 2239850

PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR IN ANY WAY RELATING TO THE LOAN, THE AGREEMENT OR THIS STIPULATION, THE PREMISES, ANY OR ALL OF THE REAL AND PERSONAL PROPERTY COLLATERAL SECURING THE LOAN OR ANY OF THE TRANSACTIONS WHICH ARE CONTEMPLATED BY THE LOAN DOCUMENTS. THE JURY TRIAL WAIVER CONTAINED IN THIS SECTION IS INTENDED TO APPLY, TO THE FULLEST EXTENT PERMITTED BY LAW, TO ANY AND ALL DISPUTES AND CONTROVERSIES THAT ARISE OUT OF OR IN ANY WAY RELATE TO ANY OR ALL OF THE MATTERS DESCRIBED IN THE PRECEDING SENTENCE, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS OF ANY KIND WHATSOVER. THE WAIVER CONTAINED IN THIS SECTION SHALL APPLY TO ALL SUBSEQUENT EXTENSIONS, RENEWALS, MODIFICATIONS AND REPLACEMENTS OF ANY OR ALL OF THE LOAN DOCUMENTS. THIS STIPULATION MAY BE FILED WITH ANY COURT OF COMPETENT JURISDICTION AS EACH PARTY'S WRITTEN CONSENT TO WAIVER OF A JURY TRIAL.

(q)**Conflicts With Agreement**. Notwithstanding anything in this Stipulation to the contrary, in the event of an actual conflict or inconsistency between this Stipulation and the Agreement (which is not resolved by the terms of this Stipulation itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

(r)REVIEW WITH COUNSEL. DEBTOR HEREBY ACKNOWLEDGE AND AGREE THAT: (i) THEY HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS STIPULATION, INCLUDING BUT NOT LIMITED TO THE DEED OF TRUST AND GUARANTY; (ii) THEY HAVE EXECUTED THIS STIPULATION FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE DEBTOR'S INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS STIPULATION EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION HAVE BEEN AGREED TO WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE DEBTOR HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS STIPULATION; (E) THE DEBTOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS STIPULATION; (F) THE DEBTOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS STIPULATION; (G) THE DEBTOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS STIPULATION IS NOT BASED UPON RELIANCE UPON ANY

REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS STIPULATION AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE DEBTOR RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS STIPULATION, AND THE LENDER HAS RELIED ON SUCH WAIVERS AND RELEASES IN ENTERING INTO THIS STIPULATION AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE DEBTOR RELATED PARTIES.

(s)**Jurisdiction**. Each of the parties to this Stipulation submit themselves to the jurisdiction of the Bankruptcy Court and acknowledge that the Bankruptcy Court has jurisdiction over each of the parties hereto.

(t)**Conditions Precedent**. This Stipulation shall not be effective and binding on the Parties unless and until it is executed and delivered by the Parties.

(u)**Approval by Bankruptcy Court**. This Stipulation is subject to approval by the Bankruptcy Court.

(v)**Agreement May Be Used Against the Debtor**. This Stipulation may be used as evidence against any or all of the Obligor Related Parties in any litigation now or hereafter existing.

(w)**Binding on Subsequent Trustee.** **THIS STIPULATION IS BINDING UPON ANY SUCCESSOR TO THE DEBTOR, INCLUDING, BUT NOT LIMITED TO, A TRUSTEE APPOINTED UNDER 11 USC 701, 1104.**

2237952.DOCX 2237952.DOCX[1]
pdf 2238650

Executed as of the date set forth above:

**PDG PRESTIGE, INC.,**
a Texas corporation


By:
Printed Name: Michael Dixson
Its:  President

Also executed as of the date set forth above:

**LEGALIST DIP GP, LLC,**
as general partner of
Legalist DIP Fund I, LP and
Legalist DIP SPV II, LP


By:
Name:
Title:

2237952.DOCX 2237952.DOCX[1]
pdf 2238650

## EXHIBIT A

Legal Description of Premises

Lot 3A, MESILLA VALLEY MALL SUBDIVISION REPLAT NO. 5, in the City of Las Cruces, Dona Ana County, New Mexico, as shown and designated on the plat thereof, filed in the office of the County Clerk of said County on August 19, 2020, in Book 24 Page(s) 581-582 of Plat Records.

**EXHIBIT B**

Copy of the DIP Order

47

| EXHIBIT B |
| --- |



**The relief described hereinbelow is SO ORDERED.**

**Signed April 12, 2021.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PDG PRESTIGE, INC., | § | Case No. 21-30107 |
| | § | |
| Debtor. | § | |
| | § | |

**FINAL ORDER GRANTING MOTION OF DEBTOR TO (I) ENTER INTO
DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING
LIENS UNDER CODE SEC. 364(D), AND (III) PROVIDE RELATED
RELIEF (RE: DOCKET NO. 24)**

On April 12, 2021 the Court conducted an expedited hearing regarding the *Motion to
(I) Enter into Debtor Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec.
364(d), and (III) Provide Related Relief* (Docket No. 24) (the "DIP Motion") filed herein on
March 26, 2021 by PDG-Prestige, Inc., debtor and debtor in possession (the "Debtor" or "PDG")
seeking entry of a final order for, *inter alia*:

1.       authorizing the Debtor to obtain postpetition financing, consisting of senior
secured superpriority term loans (the "DIP Loans") in an aggregate maximum amount of
$4,700,000 (the "DIP Commitment"), from certain investment fund(s) for which Legalist DIP
GP, LLC serves as general partner (as lender, agent, and collateral agent, the "DIP Lender"), as
provided in that certain Debtor-in-Possession Term Loan Credit Agreement, dated as of the date
hereof, among the Debtor and the DIP Lender (the "DIP Credit Agreement"), which DIP Credit
Agreement was attached to the DIP Motion, and to incur the DIP Obligations contemplated
thereby;

---

2.     authorizing the Debtor to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the DIP Credit Agreement and other DIP Loan Documents;

3.     authorizing the Debtor to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents;

4.     providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate;

5.     authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) in all DIP Collateral to secure pay of all DIP Obligations, comprising:

(i)     pursuant to Code § 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Existing Liens;

(ii)     pursuant to Code § 364(c)(3), junior DIP Liens on all DIP Collateral subject to Existing Liens;

(iii)     pursuant to Code § 364(d)(1), equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens; and

(iv)     pursuant to Code § 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens;

6.     vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein;

7.     approving all Cash-Management Requirements and the Debtor's entry into the cash-management arrangements and DIP Blocked Account control agreements contemplated thereby; and

8.     granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

---

**ORDER GRANTING MOTION TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) PROVIDE RELATED RELIEF — Page 2** 1943767.DOCX [1]

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      On February 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

2.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

3.      An immediate and ongoing need exists for the Debtor to obtain postpetition financing in the amount of the DIP Commitment to reorganize under Bankruptcy Code Chapter 11, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

4.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Commitment on terms more favorable than those provided by the DIP Lender.

5.      sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

6.      The terms of the DIP Loans, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and rights and remedies of the DIP Lender.

7.      The terms of the DIP Loans, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Document.

8.      Entry of this Final DIP Order is in the best interests of the Debtor's estate and its various stakeholders because it will, inter alia, allow the Debtor to reorganize under Bankruptcy Chapter 11 of the Code; and

9.      The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents.

10.     By stipulation with the DIP Lender, the Debtor is not a "single asset real estate" type of debtor as defined in Code § 101(51B).

**IT IS THEREFORE ORDERED THAT:**

1.  Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED as set forth below.

2.  The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.  The Debtor is authorized to borrow up to the full amount of the DIP Commitment in DIP Loans in one or more DIP Draws on the terms of the DIP Loan Documents, without application to or further order by the Court.

4.  All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims, without application to or further order by the Court.

5.  All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate (expressly including all DIP Collateral).

6.  The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising:

    a.  Pursuant to Code § 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Existing Liens;

    b.  Pursuant to Code § 364(c)(3), junior DIP Liens on all DIP Collateral subject to Existing Liens

    c.  Pursuant to Code § 364(d)(1), equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens; and

    d.  Pursuant to Code § 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens.

7.  The proceeds of the DIP Loans shall be used by the Debtor exclusively to (a) pay DIP Lender Expenses, (b) pay all other DIP Obligations, and (c) pay other amounts permitted under the Budget; provided that no portion of the DIP Loans

---

shall be used for fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, DIP Loan Document, or right or remedy of the DIP Lender.

8.  So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

9.  The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date.

10. An Event of Default shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents.

11. Notwithstanding Code § 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court:

    a.  declare the DIP Commitment terminated;

    b.  declare all DIP Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Debtor;

    c.  terminate the Debtor's access to any DIP Blocked Account; and

    d.  set off against any outstanding DIP Obligation all amounts held in the DIP Blocked Accounts (less, cumulatively across such accounts, the amount of the Triggered Carveout Cap (as defined below)).

12. Furthermore, while any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.  terminating the automatic stay with respect to any DIP Collateral;

    b.  terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c.  appointing an examiner or Chapter 11 trustee; and

    d.  converting the Debtor's Case to Chapter 7;

    provided that if the DIP Lender so moves or applies, the Debtor shall be limited to contesting solely whether the Event of Default has occurred and/or is continuing,

and the Debtor has expressly waived the right to contest such relief whatsoever beyond the foregoing limitation.

13.    In addition to the rights and remedies enumerated in Paragraphs 11 and 12, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.    In consideration of the DIP Lender's (x) consent to the current payment of administrative expenses of the Debtor's estate to the extent of the Budget and (y) concessions with respect to the Carveout (defined below), as described Paragraph 15, the DIP Lender is entitled to a full and complete waiver, with respect to all parties, of Code § 506(c) and in no event shall any the DIP Lender or DIP Collateral be subject to any "surcharge" or the doctrine of "marshalling" by any party in any way whatsoever.

15.    Unless and until the Carveout Trigger Date (defined below), the Debtor shall pay administrative expenses of the Case in the ordinary course as permitted by the Budget (including the fees of counsel of the Debtor as approved by the Court on an interim and/or final basis). Notwithstanding the Budget or anything else herein or in any other DIP Loan Document to the contrary, from and after the date of delivery (the "Carveout Trigger Date") by the DIP Lender to the counsel to the Debtor and the Office of the United States Trustee (the "UST") of notice that both (a) an Event of Default has occurred and is continuing and (b) the DIP Lender has triggered the Carveout (a "Carveout Trigger Notice"), such administrative expenses shall be funded solely from an amount (the "Carveout"), not to exceed 2.50% of the DIP Loans then outstanding, to be set aside solely for (x) fees, expenses, and costs then due and payable to the UST and/or Clerk of the Court under 28 U.S.C. § 1930 plus (y) potential future fees, expenses, and costs of a statutory trustee appointed in the Debtor's case (together, the "Triggered Carveout Cap"); provided that in no event shall:

    a.    payment of any amount contemplated by the Carveout or any portion of the Triggered Carveout Cap constitute a personal liability of the DIP Lender, any Affiliate, or any other Indemnified Person; or

    b.    any such amount be used to fund fees, costs, or expenses incurred in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, DIP Loan Document, or right or remedy of the DIP Lender.

For the avoidance of doubt, (i) from and after the Carveout Trigger Date, the Debtor shall pay administrative expenses (irrespective of when incurred) solely as permitted under the Carveout, and (ii) the fees of the U.S. Trustee shall be paid in full by the Debtor and/or from proceeds of the DIP Loan.

16.    The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

17.    Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

18.    This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Code § 1141(d)), (x) appointing an examiner or Chapter 11 trustee, (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

19.    In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

20.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

---

21.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

**22.     NO LIEN GRANTED HEREIN TO THE DIP LENDER SHALL PRIME ANY STATUTORY LIEN OF ANY GOVERNMENTAL UNIT FOR AD VALOREM PROPERTY TAXES.**

23.     The DIP Lender shall not assert the Debtor is a "single asset real estate" type of debtor nor assert any rights or seek any relief with respect to Code §362(d)(3).

24.     The Debtor is authorized upon the Effective Date of the DIP Loan to advance to proposed counsel for the Debtor and/or counsel employed by the Debtor the funds indicated in the Budget for counsel and/or the carve out for Counsel, which funds counsel shall hold in trust pending interim and/or final approval of fees for such counsel.

25.     As adequate protection and as part of the initial advance(s) under the Budget, and not later than April 16, 2021, the Lender shall pay, as part of the DIP Loan availability, by wire transfer to City Bank the amount of $2,705,661.10, plus all accrued post-petition interest and all accrued pre-petition and post-petition attorneys' fees, in full satisfaction of the claim of City Bank, whereupon City Bank shall execute and deliver to the Debtor a release of any and all liens of City Bank in, or, against any property of the Debtor and/or the DIP Collateral; provided, however, until such time as City Bank has received payment in full, any advances under the DIP Loan, including DIP Obligations and DIP Claims, shall not prime City Bank's Deed of Trust lien on the DIP Collateral or any property of the Debtor and its Bankruptcy Estate pursuant to § 364 of the Bankruptcy Code; and provided, further, upon payment of City Bank in full, the automatic stay, to the extent necessary, is modified to allow City Bank to apply the payment against the indebtedness owed.

26.     With respect to New Mexico Real Estate Advisors, Inc. d/b/a Colliers International (together, "NMREA"), the following shall apply.

     a.     With the initial advance under the Budget, the Debtor is authorized and directed to pay New Mexico Real Estate Advisors, Inc, ("NMREA") the amount of $168,862.00.

     b.     Upon receipt of $168,862.00 NMREA shall execute and deliver to the Debtor a release of any and all liens of NMREA in, or, against any property of the Debtor and/or the DIP Collateral.

     c.     An additional sum of $188,862.68 will be escrowed with a mutually agreeable third party (the "Escrow Fund"), which escrow amount will be funded by equal contributions during weeks 1-6 of Budget from funds advanced under DIP Loan.

    d.       NMERA and Debtor each reserves all rights, remedies, facts, claims, issues, and/or defenses with respect to the Escrowed Funds. The Escrowed Funds will be disbursed only upon mutual written agreement and/or order of the Court.

    e.       NMERA reserves the right to seek recovery of attorney fees and/or interest against the Escrowed Funds.

    f.       Interest shall accrue only when the second one-half of the commissions (which commissions are referenced and described in the NMREA lien filings) becomes payable under the operative contract(s).

    g.       NMREA shall adhere to the confidentiality provisions of the Listing Agreement between PDG-P and NMREA and/or related to the subject real property.

### 

Submitted by:
Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

PROPOSED ATTORNEYS FOR
PDG-PRESTIGE, INC.,
DEBTOR AND DEBTOR IN POSSESSION

*{continued on following sheet}*

**AGREED:**

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:  _/s/ Jeff Carruth_
    JEFF CARRUTH (TX SBN:. 24001846)
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76105
    Telephone: (713) 341-1158
    Fax: (866) 666-5322
    E-mail:  jcarruth@wkpz.com

PROPOSED ATTORNEYS FOR PDG PRESTIGE, INC.
DEBTOR AND DEBTOR IN POSSESSION

MULLIN HOARD &BROWN, LLP

By:  _/s/ Brad W. Odell*_
    Brad W. Odell, SBN: 24065839
    P. O. Box 2585
    Lubbock, Texas 79408-2585
    Tel: (806) 765-7491
    Fax: (806) 765-0553
    Email: bodell@mhba.com

ATTORNEYS FOR CITY BANK

KEMP SMITH LLP

By:  _/s/ James W. Brewer*_
    James W. Brewer
    SBN 02965200
    P.O. Box 2800
    El Paso, Texas 79999-2800
    Tel: 915.533.4424
    Fax: 915.546.5360
    james.brewer@kempsmith.com

ATTORNEYS FOR NEW MEXICO REAL ESTATE
ADVISORS, INC. D/B/A COLLIERS
INTERNATIONAL

***Signature by permission by /s/ Jeff Carruth***

---

ORDER GRANTING MOTION TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT
PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) PROVIDE RELATED RELIEF — Page 10    1943767.DOCX [1]

# EXHIBIT C

## DEED OF TRUST

**[see attached]**

2237952.DOCX 2237952.DOCX[1]
pdf 2239650

When recorded, return to:
Legalist DIP Fund I, LP
195 Hwy. 50, No 7172-210
Stateline, NV 89449

# DEED OF TRUST

      THIS DEED OF TRUST, made this ⎯⎯ day of October, 2022, by PDG PRESTIGE, INC., a Texas corporation whose address is 300 E. Main, Suite 1000, El Paso, Texas 79901 ("Borrower"), which expression shall include Borrower's personal representatives, administrators, assigns, and successors in interest, to Christopher Wren, as trustee ("Trustee"), whose address is 195 Hwy. 50, No 7172-210, Stateline, Nevada 89449, for the benefit of LEGALIST DIP FUND I, LP, LEGALIST DIP SPV II, LP, and LEGALIST DIP GP, LLC (collectively, "Lender"), whose address is 195 Hwy. 50, No 7172-210, Stateline, Nevada 89449, which expression shall include Lender's heirs, personal representatives, administrators, assigns, and successors in interest.

This debt is evidenced by that certain Debtor-in-Possession Term Loan Credit Agreement between Borrower (as Debtor) and Lender (as DIP Lender) dated as of April 12, 2021 as approved by that certain Agreed Final Order Granting Motion of Debtor To (I) Enter into Debtor in Possession Credit Agreement, (II) Granting Priming Liens Under Code Sec. 364(D), and (III) Provide Related Relief In re PDG Prestige, Inc., Case No. 21-30107 ("Debtor-in-Possession Term Loan Credit Agreement"). This Deed of Trust secures to Lender: (a) the repayment of the DIP Obligations; (b) the performance of Borrower's covenants and agreements under this Deed of Trust and the Debtor-in-Possession Term Loan Credit Agreement; and (d) all obligations, debts, and liabilities, plus interest thereon, of Borrower to Lender, whether now existing or hereafter arising, whether related or unrelated to the purpose of the DIP Obligations and is on the **statutory mortgage condition** for the breach of which it is subject to foreclosure as provided by law.  For this purpose, Borrower does hereby mortgage, grant and convey to Trustee, and to its successors and assigns as trustee, in trust for the benefit of Lender and the successors and assigns of Lender, **WITH POWER OF SALE**, the following described real property located in Dona Ana County, New Mexico with **mortgage covenants**:

     **\*\*\* SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"\*\*\***

together with all improvements and buildings now or hereafter erected thereon, and all easements, fixtures (including, but not limited to, all ventilating, heating, air-conditioning, refrigeration, plumbing and lighting fixtures), tenements, privileges, rents, royalties, oil, gas and mineral rights and profits, water rights, hereditaments and appurtenances now or hereafter a part of the property, and the reversion and reversions, remainder and remainders, leases, rents, issues, income and profits thereof, and all the estate, right, title, interest, claim and demand whosoever of the Borrower, either in law or in equity, of, in, and to the above property. All of the foregoing is referred to in this Deed of Trust as the "Subject Property."  The Subject Property has an address of 510 S. Telshor Blvd., City of Las Cruces, Dona Ana County, New Mexico.  Borrower understands and agrees that Lender has the right to exercise any or all of the interests granted by Borrower in this Deed of Trust, including, in the event of a default by Borrower hereunder, but not limited to, the right to foreclose and sell the Subject Property and to take any action required of Lender, including, but not limited to releasing or canceling

1

this Deed of Trust. In addition, Borrower grants Lender a first and prior Uniform Commercial Code security interest in all goods, equipment, fixtures, furniture and other articles of personal property now or hereafter owned by the Borrower, and now or hereafter attached or affixed to the Subject Property or used or useful in Borrower's business,, together with all accessions, parts and additions to, all replacements of, and all substitutions for, any such property, and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of such property (the "Personal Property"). The Uniform Commercial Code security interest granted herein secures the following: (a) the repayment of the DIP Obligations, with interest, and all renewals, extensions and modifications of the Debtor-in-Possession Term Loan Credit Agreement; (b) the payment of all other sums, with interest, advanced pursuant to this Deed of Trust to protect the security of this Deed of Trust; and (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Debtor-in-Possession Term Loan Credit Agreement. Hereinafter, the Subject Property and the Personal Property shall be referred to collectively as the "Mortgaged Property."

In addition to the mortgage covenants and statutory mortgage condition, this Deed of Trust is subject to the following covenants and conditions for the breach of which it is subject to foreclosure as provided by law and the Borrower hereby covenants and agrees with the Lender as follows:

1. **Borrower's Representations.** At the time of the execution and delivery of this Deed of Trust, the Borrower is well seized of the Mortgaged Property in fee simple, and has good right, full power, and lawful authority to grant, bargain, sell, convey, and mortgage the same in manner and form aforesaid and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, and encumbrance of whatsoever kind and nature, and that the Borrower shall and will forever warrant and defend the quiet and peaceable possession granted and conveyed to Trustee, **IN TRUST, WITH POWER OF SALE**, for the benefit of Lender, the same against the lawful claims and demands of all persons, except as in this paragraph stated.

2. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Mortgaged Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Mortgaged Property to pay the rents to Lender or Lender's Agents. However, prior to Lender's notice to Borrower of any default or breach of any covenant, term, condition, or agreement in the Mortgage, Borrower shall collect, receive and may use all rents and revenues of the Mortgaged Property. Notwithstanding the license granted to Borrower to collect and use said rents and revenues, this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. If Lender gives notice of default or breach to Borrower: (a) all rents thereafter received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Mortgage; (b) Lender shall be entitled to collect and receive all of the rents of the Mortgaged Property; and (c) each tenant of the Mortgaged Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant. Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section. Lender shall not be required to enter upon, take control of or maintain the Mortgaged Property before or after giving notice of breach or default to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall

2

2239396.DOCX[1]

not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Mortgaged Property shall terminate when the debt secured by the Mortgage is paid in full.

3. **Payments on the DIP Obligations.** The Borrower shall promptly pay and otherwise perform all obligations as provided in Debtor-in-Possession Term Loan Credit Agreement, or any renewal or extension thereof, and in the manner, form, and at the time or times provided in the Debtor-in-Possession Term Loan Credit Agreement or in any renewal or extension thereof. The Borrower shall promptly pay all such additional sums as may hereafter be advanced to the Borrower or expended by the Lender on behalf of the Borrower for any purpose whatsoever and evidenced by notes, drafts, open account, or otherwise, together with interest thereon at rates to be fixed at the time of advancing or expending such additional sums; provided, however, that the making of such advances or expenditures shall be optional with the Lender. This Deed of Trust shall secure the payment and performance of all renewals or extensions of the obligation secured hereby and shall secure the payment and performance of all such additional sums as may hereafter be advanced to the Borrower or expended by the Lender on behalf of the Borrower for any purpose whatsoever and evidenced by notes, drafts, open account, or otherwise, together with interest thereon, and for all of which this Deed of Trust shall stand as continuing security until fully paid; that the Lender may apply any payments made on any indebtedness secured hereby, at its option, on any such indebtedness.

4. **Application of Payments.** All payments under Section 3 above shall be applied by Lender as provided in the Debtor-in-Possession Term Loan Credit Agreement.

5. **Payment of Taxes, Assessments and Utilities.** The Borrower shall pay when due and payable all rent, charges for electrical, gas, sewage, water, and all other utility and other charges, fines, or impositions, and all laborers', mechanics' or materialmans' or other liens that may be laid or assessed upon the Mortgaged Property or on any interest therein. The Borrower shall pay or cause to be paid when due and payable all taxes, assessments and other charges, fines and impositions attributable to the Mortgaged Property which may attain a priority over this Deed of Trust. Borrower shall promptly discharge any lien which has priority over this Deed of Trust; provided that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Mortgaged Property or any part thereof.

6. **Performance of Prior Encumbrances.** The Borrower shall perform the conditions and comply with the terms of any prior mortgage, encumbrance, condition, or covenant on the Mortgaged Property. If Borrower fails to comply with such terms and defaults on these mortgages or obligations, such default shall also be considered a default of this Deed of Trust, and Lender may advance the moneys necessary to remedy such defaults, and, if it does, such moneys shall be added to the obligation secured and shall bear interest at the Default Rate as defined in the Debtor-in-Possession Term Loan Credit Agreement. In addition, Lender may address the default by exercising any remedies it has pursuant to this Deed of Trust.

7. **Care of the Mortgaged Property.** The Borrower shall, during the continuance of any of the indebtedness secured hereby, keep all buildings and other destructible improvements now existing or hereafter erected on the Mortgaged Property in good order, condition, and repair at Borrower's

3

2239396.DOCX[1]

own expense and shall not commit or suffer any waste of the Mortgaged Property. Borrower shall not perform any act that will destroy or damage the Mortgaged Property. Borrower shall not allow the Mortgaged Property to deteriorate, reasonable wear and tear excepted. Borrower shall not perform any act that will unduly impair or depreciate the value of the Mortgaged Property. If Borrower fails to do anything required by this Section, Lender may, following a reasonable notice period of not less than ten (10) days, make necessary repairs to the Mortgaged Property and add the cost thereof to the obligation secured by this Deed of Trust. Borrower shall not abandon or leave unattended the Personal Property. Borrower shall do all other acts, in addition to those acts set forth in this Deed of Trust, which are reasonably necessary to protect and preserve the Personal Property.

8.  **Replacement of Personal Property.** Borrower shall not, without the prior written consent of Lender, permit any of the Personal Property to be removed at any time from the Subject Property.

9.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of Borrower's interest in the Subject Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

Borrower shall notify the Lender of the institution of eminent domain or condemnation proceedings of any character affecting the Subject Property, or any part thereof; that any money awarded Borrower in such proceedings, or as a result of such proceedings, are hereby assigned and shall be paid to Lender to be applied toward payment of any sums secured hereby, as the Lender shall determine; that the Lender shall have a lien on any money, judgment or award given or made to, or in favor of, the Borrower as a result of any such proceedings or as a result of any condemnation or any exercise of the right of eminent domain, whether the same be made the subject of court proceedings or not, affecting the Mortgaged Property, or any part thereof; that this Deed of Trust shall not be a waiver of the right of the Lender to be made a party to such proceeding, or any proceeding affecting the title to said property, or any part thereof, and shall not obviate the necessity of making the Lender a party thereto; and that in case the Lender be made a party to any such proceeding, the Lender shall have the right to defend the same, and the expense thereof, including reasonable attorney fees, shall be a lien on said property and shall be secured by this Deed of Trust, repayable by the Borrower on demand.

In the event of a total taking of the Subject Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

If an event of default has not occurred, all proceeds received by Lender with respect to restoration of the Subject Property necessitated by a partial taking of the Subject Property will be applied to the expense of such restoration. Lender will reasonably ascertain the portion of any governmental award or payment so allocable.

If the Subject Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date such notice is mailed, Lender is authorized to collect

4

2239396.DOCX[1]

and apply the proceeds, at Lender's option, either to restoration or repair of the Subject Property or to the sums secured by this Deed of Trust.

10. **Hazardous Substances.** As used herein, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde and radioactive materials. As used herein, "Environmental Law" means federal laws and the laws of the jurisdiction where the Mortgaged Property is located that relate to health, safety or environmental protection. Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Mortgaged Property unless said use is in full compliance with Environmental Law. Borrower shall not do, nor allow anyone else to do, anything affecting the Mortgaged Property that is a violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Mortgaged Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal commercial uses and to maintenance of the Mortgaged Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Mortgaged Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Mortgaged Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

11. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Mortgaged Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, the Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney fees and entry upon the Mortgaged Property to make repairs.

Any amounts disbursed by Lender pursuant to this Section 11, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate of thirty percent (30%) per annum unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this Section 11 shall require Lender to incur any expense or take any action hereunder.

12. **Lender's Right to Inspect Mortgaged Property.** Lender may inspect the Mortgaged Property without notice if it is vacant or abandoned or if the Borrower is in default as set forth herein. Lender may take reasonable action to preserve and protect the Mortgaged Property if it is vacant or abandoned. In addition, Lender may upon reasonable notice to Borrower make reasonable entries upon and inspections of the Mortgaged Property.

5

2239396.DOCX[1]

13. **Indemnification of Lender.** Borrower shall hold Lender harmless from, and indemnify it for, any and all claims raised by any third party against Lender resulting from Lender's interests hereunder or the acts or omissions of the Borrower. Such indemnification shall include reasonable attorney's fees and costs.

14. **Security Agreement.** This instrument shall constitute a "Security Agreement" within the meaning of the Uniform Commercial Code and other applicable law to the extent any of the Personal Property constitutes fixtures, or which may become fixtures, or other property which otherwise is or may become affixed to the Subject Property, and the Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

15. **Financing Statements.** Upon request by Lender, Borrower shall execute and deliver to Lender such financing statements, such further assurances and take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Borrower, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall not remove, sever, or detach the Personal Property from the Subject Property. Upon default, Borrower shall assemble any Personal Property not affixed to the Subject Property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

16. **Fixture Filing.** This Deed of Trust shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code against all of the Personal Property which is or is to become fixtures. Information concerning the security interest herein granted may be obtained at the addresses of the Borrower (Debtor) and the Lender (Secured Party) as set forth in the first paragraph of this Deed of Trust.

17. **U.C.C. Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

18. **Borrower's Default.** Each of the following shall be considered a default of this Deed of Trust:

A.     An Event of Default under the Debtor-in-Possession Term Loan Credit Agreement;

B.     An Event of Default under that certain Debtor-in-Possession Term Loan Credit Agreement between Grantor (as Debtor) and Lender (as DIP Lender) dated as of June 24, 2021 as approved by that certain Agreed Final Order Granting Motion of Debtor To (I) Enter into Debtor in Possession Credit Agreement, (II) Granting Priming Liens Under Code Sec. 364(D), and (III) Provide Related Relief *In re The Gateway Ventures, LLC*, Case No. 21-30071; or,

2239396.DOCX[1]

C.     A Default under that certain So-ordered Stipulation of Settlement by and among Grantor (as Debtor) and Lender (as DIP Lender) dated as of October _____, 2022 as approved by *** (the "**Stipulation of Settlement**").

19. **Acceleration and Foreclosure.** If there is any default in or breach of any covenant, term, condition, or agreement of this Deed of Trust, all indebtedness secured by this Deed of Trust, whether the same shall be due and payable according to the tenor and effect thereof or not, and anything herein to the contrary notwithstanding, shall, at the option of the Lender, immediately become due and payable without notice to the Borrower or the exercise of such option. Upon the happening of such event, this Deed of Trust shall be subject to foreclosure at the option of the Lender, acting directly or through Trustee or other agents, nominees, or attorneys, and the Mortgaged Property may be sold in the manner and form prescribed by law. In the event of any sale hereunder, the Lender may become the purchaser of the Mortgaged Property or any part thereof and shall be entitled to a credit on the purchase price in the amount of its interest in the Mortgaged Property, including, but not limited to all amounts paid in connection with the foreclosure and/or the preservation of the Mortgaged Property.

20. **Junior Encumbrance.** Borrower acknowledges that no second mortgage or other form of junior encumbrance will be placed upon the Mortgaged Property.

21. **Attorney's Fees.** The Borrower will pay to the Lender, in addition to all of the other indebtedness secured hereby, reasonable attorney's fees and costs whenever any applications to any court alternative dispute resolution forum or referee shall be made to compel the payment of any indebtedness secured hereby or to foreclose this Deed of Trust, and the amount of such attorney's fees and costs shall be considered additional indebtedness secured hereby.

22. **Standard Form of Lease.** If the Mortgaged Property is a multi-family or multi-tenant residential project, or is a mobile home park, trailer park or park, Borrower represents, warrants and covenants that the standard form of lease in use with respect to the Mortgaged Property complies and shall, until the DIP Obligations is fully paid, comply in all respects with the owner-resident relations act or the mobile home park act, as the case may be, in effect in New Mexico. If the Mortgaged Property is a mobile home park, trailer park or park as defined in the mobile home park act, Borrower shall at all times comply with the provisions of that act as applicable to Borrower as landlord or management.

23. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of the sums secured by this Deed of Trust granted by Lender to any successor in interest to Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

24. **Remedies Cumulative, Concurrent and Nonexclusive.** Lender shall have all rights, remedies and recourses granted in this Deed of Trust and the Debtor-in-Possession Term Loan Credit

7

Agreement and available at law or in equity (including the Uniform Commercial Code), which rights (a) shall be cumulative and concurrent; (b) may be pursued separately, successively or concurrently against Borrower or others obligated under this Deed of Trust and the Debtor-in-Possession Term Loan Credit Agreement, or against the Mortgaged Property, or against any one or more of them, at the sole discretion of Lender; (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. No action by Lender in the enforcement of any rights, remedies or recourse under this Deed of Trust or the Debtor-in-Possession Term Loan Credit Agreement or otherwise at law or in equity shall be deemed to cure any default by Borrower.

25. **Notices.** Copies of all notices and communications concerning this Deed of Trust shall be mailed to the parties at the addresses specified in this Deed of Trust, and any change of address shall be communicated to the other party in writing. Any documents which may adversely affect the rights of any party to this Deed of Trust shall be dispatched by Certified Mail, Return Receipt Requested.

26. **Headings.** The marginal or topical headings of the provisions herein are for convenience only and do not define, limit or construe the contents of these provisions.

27. **Binding Effect.** All of the grants, covenants, terms, conditions, and agreements hereof shall be binding upon and inure to the benefit of all of the heirs, personal representatives, administrators, assigns, and successors in interest of the parties hereto.

28. **Redemption Period.** If this Deed of Trust is foreclosed, the redemption period after judicial sale shall be one (1) month in lieu of nine months.

29. **Indemnification.** To the extent, if at all, that this Deed of Trust is deemed to be a "construction contract" or requires naming the indemnified party as an additional insured within the meaning of NMSA 1978 § 56-7-1 (2005) as amended from time to time, it shall not be construed to indemnify the indemnitee, its officers, employees or agents from their own negligence, acts or omissions, but shall be limited to liability, damages, losses or costs caused by, or arising out of, the acts or omissions of the indemnitor or its officers, employees or agents.

30. **Entire Agreement.** The terms of this Deed of Trust, together with the terms of the DIP Obligations dated the same date as this Deed of Trust, constitute the entire agreement between the parties, and the parties represent that there are no collateral or side agreements not otherwise provided for within the terms of this Deed of Trust and the DIP Obligations.

31. **Time of Essence.** Time is of the essence as to this Deed of Trust and every term, condition, covenant and provision hereof.

32. **Modification.** No modification of this Deed of Trust shall be binding unless evidenced by an agreement in writing and signed by both parties.

2239396.DOCX[1]

33. **Partial Invalidity.** If any provision of this Deed of Trust is held to be invalid or unenforceable, all the remaining provisions shall nevertheless continue in full force and effect.

34. **Authority.** Borrower represents that the rights specified herein were previously granted by order entered on April 12, 2021, in In re PDG Prestige, Inc., No. 21-30107, United States Bankruptcy Court for the Western District of Texas [Doc. #43] and related documents (the "DIP Order"). This Deed of Trust is executed pursuant to the authority granted to Borrower in the DIP Order and the Stipulation Settlement.

35. **Borrower's Waivers.** Borrower hereby waives, to the fullest extent permitted by applicable law, the rights and benefits set forth in this Section and to the extent permitted by applicable law, these waivers shall bind all successors and persons deriving rights and benefits from or through Borrower.

A.     Borrower waives the right to stay or extend any proceeding involving the sale of the Mortgaged Property, or to require the Lender to sell the Mortgaged Property in separate tracts or parcels. Borrower further waives all rights to occupy the Mortgaged Property during the pendency of any sale proceedings or to redeem the Mortgaged Property after all or any portion thereof is sold in such proceeding.

B.     Borrower waives any right to a valuation or appraisal of the Mortgaged Property prior to any sale and waives all rights pertaining to the marshalling of assets in connection with any such sale.

C.     Borrower waives and renounces all right of homestead exemption in the Mortgaged Property and waives all benefits, if any, to rights of moratorium, or to designate all or any portion of the Mortgaged Property as exempt from forced sale under any provision of the Constitution or laws of the United States, or as exempt from attachment, levy, or sale under civil process.

D.     Borrower waives the benefit of any statute of limitations or laches defense as to the payment of the debt secured hereby or the performance of any obligations hereunder.

E.     Except as expressly provided in the Debtor-in-Possession Term Loan Credit Agreement, Borrower waives the right to receive any notice of Lender's intent to exercise any right, remedy, or power, in connection with the this Deed of Trust or the Debtor-in-Possession Term Loan Credit Agreement, including without limitation, notice of intent to accelerate the debt, notice of presentment, demand for payment, protest, notice of dishonor, or notice of maturity.

F.     Borrower waives the right to assert any counterclaim, other than a mandatory or a compulsory counterclaim, in any action or proceeding brought by Lender or Trustee arising out of, or in any way connected with, this Deed of Trust, the Debtor-in-Possession Term Loan Credit Agreement, or the Mortgaged Property.

2239396.DOCX[1]

G.    BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS DEED OF TRUST, THE DEBTOR-IN-POSSESSION TERM LOAN CREDIT AGREEMENT OR THE OBLIGATIONS AND TRANSACTIONS CONTEMPLATED THEREIN, WHETHER BASED ON CONTRACT, EQUITY, TORT, OR ANY OTHER LEGAL THEORY. THIS WAIVER OF THE RIGHT TO A TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

**36. Trustee.**

A.    Borrower shall pay all reasonable fees and expenses incurred by Trustee in connection with Trustee's performance of its duties hereunder, including, without limitation expenses for legal and other professional advisors. Any amounts incurred by Lender as a result of Borrower's failure to pay such fees and expenses as provided in this Section 35, shall be added to the debt secured by this Deed of Trust and bear interest at the at the highest rate provided in the Debtor-in-Possession Term Loan Credit Agreement.

B.    Trustee, by acceptance of this Deed of Trust, covenants to perform and fulfill the trusts and duties herein created and by this deed conferred upon Trustee. Notwithstanding the foregoing, Trustee shall not execute any powers, take any action, or provide any notices under this Deed of Trust without Lender's prior written consent in each instance. Trustee shall have an affirmative duty to reasonably cooperate, at Lender's request, to protect the Mortgaged Property and to enforce Lender's rights hereunder, however, nothing herein shall obligate Trustee to commence or defend any suit or take any action unless instructed or consented to by Lender. Trustee shall have no duty in its capacity as trustee to record or file this Deed of Trust or any supplemental instrument to this Deed of Trust, or to give any notices, collect any payments, or monitor the performance or observance of Borrower's covenants and agreements herein. In no event and under no circumstances shall Trustee be responsible for the sufficiency of the security purported to be created by this Deed of Trust and Trustee makes no representations or warranties in respect of the sufficiency of the rights, liens, and security interests purportedly created hereunder for the benefit of Lender.

C.    At the request (or with the approval) of Lender and subject to applicable law, Trustee may perform any duty hereunder either directly or through one or more appointed agents and designees. Trustee shall be entitled to reimbursement for all out-of-pocket expenses incurred in the performance of its duties, including, without limitation, the expense of hiring agents and designees.

2239396.DOCX[1]

D. Any money received by Trustee with respect to the Mortgaged Property or the debt secured hereunder shall, until delivered to Lender or Lender's nominee, be held by Trustee IN TRUST. Such money shall be segregated from any other money in Trustee's possession; provided, however, Trustee shall have no obligation to maintain such funds in an interest-bearing account unless required by law.

E. Trustee shall have no personal liability of any kind for the debt secured hereby. In case of entry upon the Mortgaged Property by Trustee or others entering by virtue of the powers herein granted, Trustee shall have no liability for any error, act, or omission in the performance of the duties requested or approved by Lender pursuant to this Section 35, except for Trustee's gross negligence or willful misconduct. In exercising the powers and duties granted hereunder, Trustee shall have the right to rely on advice of counsel with respect to any matter arising hereunder and may rely on any instrument or instructions that Trustee believes in good faith to be genuine.

F. Trustee may resign at any time upon written notice to Lender delivered not less than thirty (30) days prior to the intended date of resignation. Trustee shall have no right to delegate the powers or duties granted to Trustee hereunder or convey or reconvey the Mortgaged Property except as derived under this Deed of Trust.

G. Lender shall have the right to remove Trustee at any time and from time to time, for any reason or for no reason. In the event of Trustee's death, resignation, refusal to act, disqualification, disability, or if Lender shall elect to remove Trustee pursuant to this Section, Lender may, in its sole discretion, appoint one or more successor trustees (including, if permitted by law, Lender or its affiliates), without application to any court, notice to Borrower or Trustee, or compliance with any formality, except as required by applicable law.

H. Any successor trustee appointed under this Deed of Trust shall, without further act, deed, or conveyance, become vested with all of the estates, rights, powers, privileges, immunities, and duties herein conferred upon Trustee with like effect as if any such successor were originally named as the trustee herein.

I. Upon the written request of Lender, Trustee and any successor of Trustee hereby agrees to execute and deliver any instruments or property and take any action as Lender shall reasonably request.

37. **Governing Law; Severability.** This Deed of Trust shall be subject to and governed by federal law and the laws of the state of New Mexico, regardless of the fact that one or more parties is now or may become a resident of a different state. In the event that any provision or clause of this Deed of Trust, the Debtor-in-Possession Term Loan Credit Agreement or the DIP Order conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust, the Debtor-in-Possession Term Loan Credit Agreement or the DIP Order which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust, the Debtor-in-Possession Term Loan Credit Agreement or the Dip Order, as applicable, are declared to be severable.

2239396.DOCX[1]

The DIP Order is governed by New York Law.

NOTWITHSTANDING THE CHOICE OF LAW PROVISION IN THE DIP ORDER OR IN THE DEBTOR-IN-POSSESSION TERM LOAN CREDIT AGREEMENT:

(I)      THE PROCEDURES GOVERNING THE ENFORCEMENT BY LENDER OF ITS FORECLOSURE AND OTHER REMEDIES AGAINST BORROWER UNDER THIS DEED OF TRUST, THE DEBTOR-IN-POSSESSION TERM LOAN CREDIT AGREEMENT OR THE DIP ORDER, WITH RESPECT TO THE REAL PROPERTY OR OTHER ASSETS SITUATED IN THE STATE OF NEW MEXICO, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW MEXICO; AND

(II)     LENDER SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF NEW MEXICO TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THE DIP ORDER AND THE DEBTOR-IN-POSSESSION TERM LOAN CREDIT AGREEMENT WITH RESPECT TO THE REAL PROPERTY OR OTHER ASSETS SITUATED IN THE STATE OF NEW MEXICO.

[SIGNATURE PAGE TO FOLLOW]

12

2239396.DOCX[1]

**IN WITNESS WHEREOF,** the Borrower has executed this indenture the day and year first above written.

PDG PRESTIGE, INC.,
a Texas corporation

By: _____
Printed Name: Michael Dixson
Its:  President

STATE OF TEXAS                    )
                                  ) ss.
COUNTY OF Travis                  )

     BEFORE ME, the undersigned authority, on this day personally appeared Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, and as the act and deed of said corporation, and in the capacity therein stated.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 18 day of October, 2022.

[S E A L]

_____
NOTARY PUBLIC, STATE OF TEXAS

JASMINE MERCEDES ESNAYDER
Notary ID #133440212
My Commission Expires
November 9, 2025

13

2239396.DOCX[1]

## EXHIBIT A

Legal Description of Premises

Lot 3A, MESILLA VALLEY MALL SUBDIVISION REPLAT NO. 5, in the City of Las Cruces, Dona Ana County, New Mexico, as shown and designated on the plat thereof, filed in the office of the County Clerk of said County on August 19, 2020, in Book 24 Page(s) 581-582 of Plat Records.

2237952.DOCX 2237952.DOCX[1]