UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| PDG PRESTIGE, INC., | § § | Case No. 21-30107 |
| Debtor. | § § § | |

# OBJECTION TO LEGALIST MOTION TO SELL (RE: DOCKET NO. 257)

**TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:**

PDG Prestige, Inc., reorganized debtor (the "Debtor" or "PDGP") files this objection to the Legalist motion to sell (Docket No. 257) (the "Motion") and in support thereof would show to the Court the following.

1. Debtor objects to the Motion and disputes the factual predicate contained therein.

2. Since October-November, 2022, Legalist:

    a. directly and/or indirectly has controlled the sale process of Lot 3A, including the timing of any sale; and

    b. has rejected one or more sale offers for the remaining Lot 3A, which offers were procured by the Debtor at the request of Legalist and presented by the Debtor to Legalist, and which offers separately came from third parties and from Mr. Dixson, and ranged at various times from $1.4 million to $2.0 million. *See* **Exhibit PDG010.**

    c. Debtor understands that Mr. Dixon's offer of $2.0 million is still open to Legalist.

3. The highest remaining offer of those offers should be investigated and if still available should be pursued to Legalist to closing prior to engaging in another sale process.

4. The parties have possessed a CBRE appraisal of Lot 3A from November or December, 2022, indicating the value of the land.

5. Legalist responded to the sale offers that it required time to study the valuation of the remaining Lot 3A, and yet after eight to nine months have passed for such valuation study without any movement from Legalist.

6. Another sale process is unlikely to produce a result higher than the offer(s) made to date. On the other hand, the time sought by Legalist unnecessarily will increase interest and other expenses on the debt.

WHEREFORE, the Debtor respectfully requests that the Court deny the Motion. Debtor respectfully requests such other and further relief to which Debtor is entitled at law or in equity.

Dated: June 23, 2023  Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: /s/ Jeff Carruth
JEFF CARRUTH (TX SBN:. 24001846)
3030 Matlock Rd., Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
E-mail: jcarruth@wkpz.com

ATTORNEYS FOR
PDG PRESTIGE, INC.
REORGANIZED DEBTOR

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on June 23, 2023 by electronic notice, only, to counsel for Legalist and all ECF users who have appeared in this case to date.

*/s/ Jeff Carruth*
JEFF CARRUTH

**21-30107-hcm Notice will be electronically mailed to: (DUPLICATES DELETED)**

James W. Brewer on behalf of Creditor New Mexico Real Estate Advisors, Inc. d/b/a Colliers International
jbrewer@kempsmith.com, tschoemer@kempsmith.com

Jeff Carruth on behalf of Debtor PDG Prestige, Inc.
jcarruth@wkpz.com, jcarruth@aol.com;ATTY_CARRUTH@trustesolutions.com

Harrel L. Davis, III on behalf of Creditor Suresh Kumar
hdavis@eplawyers.com, vrust@eplawyers.com;vpena@eplawyers.com

James Michael Feuille on behalf of Creditor Dennis Crimmins
jfeu@scotthulse.com, tmar@scotthulse.com

David P. Lutz on behalf of Debtor PDG Prestige, Inc.
dplutz@qwestoffice.net

David P. Lutz on behalf of Defendant PDG Prestige, Inc.
dplutz@qwestoffice.net

Michael R. Nevarez on behalf of Interested Party Westar Investors Group, LLC
MNevarez@LawOfficesMRN.com, MRN4Bankruptcy@gmail.com

Brad W. Odell on behalf of Creditor City bank
bodell@mhba.com, memert@mhba.com;mreynolds@mhba.com;bwodellscvtxw@ecf.axosfs.com

Clyde A. Pine, Jr. on behalf of Creditor HD Lending, LLC
pine@mgmsg.com, clyde.pine@gmail.com

James W Rose, Jr on behalf of U.S. Trustee United States Trustee - EP12
james.rose@usdoj.gov,
brian.r.henault@usdoj.gov;carey.a.tompkins@usdoj.gov;Roxana.peterson@usdoj.gov;aubrey.thomas@usdoj.gov

Donald P. Stecker on behalf of Creditor City Of El Paso
don.stecker@lgbs.com

Casey Scott Stevenson on behalf of Plaintiff Dennis Crimmins
cste@scotthulse.com, svar@scotthulse.com

United States Trustee - EP12
USTPRegion07.SN.ECF@usdoj.gov

**EXHIBIT PDG010**

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE & SALE AGREEMENT, (the "Contract") is hereby entered into by and among PDG PRESTIGE, Inc. a Texas Corporation (hereinafter called the **"Seller"**) and **Camelot Ventures LLC**, a New Mexico limited liability company, or assigns (hereinafter called the **"Buyer"**) as of this 28th day of December 2022 (the "Effective Date").

## ARTICLE 1
## Sale & Purchase

Section 1.1 Subject to the terms and provisions hereof, the Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, a specific tract of land and improvements thereon located at 550 S. Telshor Blvd Las Cruces, NM 88011 as legally described on Exhibit "A" attached hereto and made a part hereof (hereinafter called the **"Property"**) together with all right, title and interest of the Seller in and to any and all roads, easements, streets and ways bounding the Property, and rights of ingress and egress thereto. Upon delivery of the Survey (hereinafter defined) to Buyer, the legal description of the Property shown thereon shall be substituted for the legal description originally attached hereto as Exhibit "A".

## ARTICLE 2
## Consideration for Conveyance

Section 2.1 The *Purchase Price* (herein so called) for the Property shall be the sum of $1,400,000.00

Section 2.2 The Purchase Price shall be payable by Buyer to Seller at *Closing* (herein so called) in cash, certified check or bank cashier's check, or by wire transfer of immediately available funds to the accounts of Seller, or as Seller may otherwise direct.

## ARTICLE 3
## Earnest Money

Section 3.1 Within three (3) business days after execution of this Contract by both parties and delivery to Buyer of a fully executed original, Buyer shall deposit **$5,000.00** (hereinafter called the **"Earnest Money"**) with SWAT Title Company care of Gricel Chavez located at 1125 S. Main Street Las Cruces, NM 88005 (hereinafter called the **"Title Company"**) to be held throughout the term of this Contract. Pursuant to Section 5.1 hereof. In the event this Contract is closed, all Earnest Money shall be applied to the Purchase Price at Closing. In the event this Contract is not closed, then the Title Company shall disburse the Earnest Money in the manner provided for elsewhere herein.

1

# ARTICLE 4
## Survey and Title Policy

Section 4.1  Within a reasonable time from the Effective Date, Buyer shall obtain ALTA certified survey (the **"Survey"**) of the Property.  The Survey shall: (i) confirm and identify the Property by metes and bounds or platted lot description; (ii) show that the Survey was made and staked on the ground with corners permanently marked; (iii) set forth the dimensions and total area of the Property; (iv) show the location of all improvements, highways, streets, roads, railroads, rivers, creeks, or other waterways, fences, easements, title exception matters shown in the Title Commitment, and rights of way on the Property with all easements and rights of way referenced to their recording information; (v) show any discrepancies or conflicts in boundaries, any visible encroachments, and any portion of the Property lying within the 100 year flood plain or within any wetlands; (vi) incorporate the Title Commitment and indicate whether the Schedule B Exceptions affect the Property; and (vi) contain the surveyor's ALTA certification to Buyer and the Title Company.

Section 4.2 Within five (5) days of the Effective Date, Buyer shall obtain, at Seller's cost a current title commitment (hereinafter called the **"Title Commitment"**) for the issuance of an extended Owner's Policy of Title Insurance in the amount of the Purchase Price to the Buyer from the Title Company, together with legible copies of all documents constituting exceptions to Seller's title as reflected in the Title Commitment. Buyer shall have until expiration of the Feasibility Period to review such items and to deliver to Seller in writing such objections as Buyer may have to anything contained or set forth in the Title Commitment and Survey. Any items to which Buyer does not object within the Feasibility Period shall be deemed to be **"Permitted Exceptions"** (herein so called). In no event shall any standard or preprinted title exceptions be Permitted Exceptions.  In the event Buyer timely objects to either the Title Commitment and/or the Survey as hereinabove provided, Seller shall have the right, but not the obligation, for a period of ten (10) days from receipt of Buyer's objections within which to attempt to cure such objections specified as aforesaid by Buyer. In the event that Seller fails or refuses to cure any such objections within such ten (10) days period, then, in such event, Buyer may, at its option, and as its sole remedy, by a written notice to Seller and the Title Company either (a) terminate this Contract (whereupon the Earnest Money shall be immediately returned to the Buyer) and the parties hereto shall have no further obligation one to the other hereunder, or (b) Buyer may waive any such defects as aforesaid and the transaction contemplated hereby shall be consummated as provided herein with such uncured objections being deemed additional Permitted Exceptions.

Section 4.3  Upon the Effective Date, Seller shall deliver to Buyer the following documents to the extent in Seller's possession or control ("Seller's Documents"): most recent tax bill/tax assessment statements; all existing environmental reports and studies; existing soils or engineering studies; existing site plan and survey of the Property (including civil architectural, landscaping, building or other plans related to the Property and surrounding properties and development); unrecorded documents, contracts and agreements which affect the Property; any documentation related to the project development (including construction quotes and city permit documents); the preliminary plat of the Property; and engineering studies and reports.

**EXHIBIT PDG010 - PAGE 2**

Section 4.4    At Closing, the Seller shall furnish the Buyer, at the Seller's sole cost and expense, with an extended Owner's Policy of Title Insurance issued by the Title Company on the standard form in use in the State of New Mexico, insuring good and indefeasible title to the Property in the Buyer, subject only to the Permitted Exceptions.

## ARTICLE 5
## Inspection and Zoning

Section 5.1    Buyer shall have until and through five (5) from the Effective Date (the **"Feasibility Period"**) within which to conduct all inspections, feasibility studies, due diligence, and to obtain an acceptable tenant and loan, which Buyer may, at Buyer's sole discretion, deem necessary.  Buyer may terminate this Contract for any or no reason prior to expiration of the Feasibility Period (as the same may be extended) and shall receive a refund of its Earnest Money, subject to Section 3.2.  In the event Buyer does not terminate this Contract prior to expiration of the Feasibility Period (as the same may be extended), all Earnest Money will then be released to Seller and non-refundable (but still applicable to the Purchase Price), subject to Seller's failure to perform its obligations or except as otherwise provided in this Contract for the refund of Buyer's Earnest Money.

Section 5.2    Buyer's representatives may enter upon the Property for the purpose of conducting any studies or tests, including, but without limitation, soil tests, obtaining topographical information, conducting engineering and economic feasibility studies and for all other similar preliminary work; provided, however, Buyer shall indemnify and hold harmless Seller from and against mechanic's liens or claims that may be filed on or asserted against the Property by contractors, subcontractors or materialmen performing such work for Buyer and further shall hold Seller harmless from any claim for personal injury or property damage arising out of Buyer's use and investigations of the Property.

## ARTICLE 6
## Representations and Warranties of Seller

Section 6.1    At Closing, the Seller shall represent and warrant to the Buyer that:

a. The Seller has good and marketable fee simple title to the Property, subject only to the Permitted Exceptions;

b. Seller has no actual knowledge of any condemnation proceedings having been instituted or threatened against the Property;

c. Seller has received no notice of, nor has Seller any actual knowledge of, any violations of any federal, state, county or municipal laws, ordinances, orders, regulations or requirements affecting the Property or any portion thereof, including, without limitation, any notice relating to the testing for, the presence in, or the removal from the Property of any hazardous or toxic materials, hazardous or toxic wastes, contaminants, or asbestos or of

**EXHIBIT PDG010 - PAGE 3**

compliance or failure to comply with any federal, state or local laws, rules, regulations or orders relating thereto. Seller confirms that all real estate property taxes are paid current.

    d. To the best of Seller's knowledge, there is no action, suit or proceeding pending or threatened against the Property or any portion thereof or relating to or arising out of the ownership or use of the Property or any portion thereof in any court or before or by any federal, state, county or municipal department, commission, board, bureau, agency or other governmental instrumentality.

    e. There are no adverse or other parties in possession of the Property.

    f. Seller has neither taken any action nor failed to take any action with respect to the property or having an effect on the property which has or could result in a violation of any applicable federal and/or state securities laws.

    g. Except as set forth below, Seller shall deliver the Property to Buyer at the Closing free and clear of any indebtedness secured by liens affecting the property, except the Permitted Exceptions. Any Deed of Trust securing indebtedness owed by Seller will be paid from sums due Seller at Closing.

    h. The Seller is not a foreign person within the meaning of Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended (***"IRC"***), i.e., the Seller is not a nonresident alien, foreign corporation, foreign trust or foreign estate (as those terms are defined in the IRC and Income Tax Regulations).

 Section 6.2 The representations and warranties contained in Section 6.1 shall be true and correct on the date of Closing and shall survive the Closing and continue in full force and effect notwithstanding the Closing and consummation of the sale contracted for herein, and the obligation of the Buyer to close this transaction is expressly conditioned upon said representations and warranties being true and correct on the date of Closing.

ARTICLE 7
Closing

 Section 7.1 The Closing hereunder shall take place at the offices of the Title Company within thirty (30) days after completion of the Feasibility Period, subject to satisfaction of all "Additional Conditions" described below. In the event that the Closing would occur on a day on which the Title Company is not open for business then the Closing shall be the next business day following such date. Either party may, at its option, elect to extend the Closing for a period of 30 days for any unforeseen delays by providing written notice of the same to the other party prior to the Closing. In no event shall the Closing occur after December 7th, 2022

 Section 7.2 At the Closing, Seller shall deliver or cause to be delivered to Buyer, at Seller's sole cost and expense, each of the following items:

**EXHIBIT PDG010 - PAGE 4**

        a.      A warranty deed duly executed and acknowledged by Seller, and in form for recording, conveying good, indefeasible fee simple title in the Property to Buyer, subject only to the Permitted Exceptions;

        b.      Tenant free possession of the Property;

        c.      The Title Policy in the form specified in Section 4.4 hereof;

        d.      Such evidence or documents as may be reasonably required by the Title Company evidencing the status and capacity of Seller and the authority of the person or persons who are executing the various documents on behalf of the Seller in connection with the sale of the Property; and

        e.      A Certification in a form to be provided or approved by the Buyer, signed by the Seller under penalties of perjury, containing the following:

        (i)      The Seller's U.S. Taxpayer Identification Number;

        (ii)      The home address of the Seller (or the business address of the Seller if the Seller is not an individual); and

        (iii)      A statement that the Seller is not a foreign person within the meaning of the "IRC" as defined above.

In the event that the Seller fails to deliver such Certification at Closing or the Seller delivers such Certification but the Buyer has actual knowledge that such Certification is false or the Buyer receives notice that the Certification is false from any agent of the Buyer or the Seller, the Buyer shall be entitled to withhold from the Purchase Price a sum equal to ten percent (10%) of the total amount which otherwise would have been realized by the Seller from such sale, which sum will be paid by the Buyer to the United States Treasury pursuant to the requirements of Section 1445 of the IRC and the regulations promulgated thereunder.

        f.      Such other closing statements, affidavits, and other similar documents as are commercially reasonable and are reasonably required by the Buyer or Title Company or necessary to satisfy any other provision herein.

        <u>Section 7.3</u> At the Closing, Buyer shall deliver to Seller the following items:

        a.      The Purchase Price, in the manner specified in Section 2.2 hereof; and

        b.      Such evidence or documents as may reasonably be required by the Title Company evidencing the status and capacity of Buyer and the authority of the person or persons who are executing the various documents on behalf of the Buyer in connection with the sale of the Property.

**EXHIBIT PDG010 - PAGE 5**

    c. Such other closing statements, affidavits, and other similar documents as are commercially reasonable and are reasonably required by the Title Company.

  <u>Section 7.4</u> At Closing, the following items shall be paid by, adjusted or prorated between Seller and Buyer:

    a. Ad valorem taxes and assessments for the Property for the current calendar year shall be prorated to date of Closing, and the Seller shall pay to the Buyer in cash at Closing, the Seller's pro rata portion of such taxes. Seller's pro rata portion of such taxes shall be based upon taxes actually assessed for the current calendar year. If, for any reason, ad valorem taxes for the current calendar year have not been assessed on the Property, such proration shall be estimated based upon ad valorem taxes for the immediately preceding calendar year, and adjusted when exact amounts are available. Buyer shall be responsible for all rollback taxes, if any.

    b. In the event any adjustments pursuant to this Section 7.4 are, subsequent to Closing, found to be erroneous, then either party hereto who is entitled to additional monies shall invoice the other party for such additional amounts as may be owing, and such amount shall be paid within ten (10) days from receipt of the invoice.

    c. Seller shall pay the premium for the Owner's Title Policy, the cost of preparation and recording of the deed, and one-half of any escrow fee.

    d. Buyer shall pay one-half of any escrow fee, all due diligence expenses and costs associated with financing arranged by Buyer, any endorsements to the Owner's Title Policy, and all costs associated with a Mortgagee's Title Policy.

    e. Each party will pay its own attorneys and accountants.

  Section 7.5 Buyer shall not be obligated to close on the purchase of the Property until the following conditions precedent ("Additional Conditions") have been satisfied:

  (a) The Property is legally subdivided and platted in accordance with applicable law as a separate tax parcel, at Seller's sole cost.

  (b) Buyer has been provided by Seller or third parties all documents, instruments and agreements in recordable form acceptable to Buyer to provide for (i) protection for use exclusives for the use by Buyer's tenant, (ii) cross-parking and cross-access easements with adjacent properties as determined to be necessary by Buyer, and (iii) an easement benefitting Buyer and the Property on a third party's property for the installation and operation of a pylon sign for Buyer's tenant in a location acceptable to Buyer in its sole discretion.

  (c) Any amendment or modification to existing easements, covenants and restrictions have been completed and are ready to be recorded in the real estate records as required by Buyer.

**EXHIBIT PDG010 - PAGE 6**

(d) Buyer shall have received all governmental approvals and permits for its development and intended use and improvements.

(e) The Property is zoned for Buyer's intended use of the Property.

(f) Seller has terminated or will terminate at Closing any and all agreements concerning the Property, which Buyer does not agree in writing to assume.

(g) Buyer has obtained suitable financing, as determined by Buyer in its discretion, for its acquisition of the Property.

In the event the Additional Conditions are not satisfied within twenty (20) days after the expiration of the Feasibility Period, Buyer may terminate this Contract and receive a refund of its Earnest Money.

## ARTICLE 8
## Real Estate Commission

Section 8.1 Intentionally Deleted

Section 8.2 Intentionally Deleted

## ARTICLE 9
## Remedies of Default

Section 9.1 In the event that performance of this Contract is tendered by the Seller and the sale is not consummated through default on the part of the Buyer on the Closing Date, then the Earnest Money shall be delivered to the Seller as liquidated damages for the Buyer's default, as the Seller's sole remedy. Such amount is agreed upon by and between the Seller and the Buyer as liquidated damages, due to the difficulty and inconvenience of ascertaining and measuring actual damages, and the uncertainty thereof; and no other damages, rights or remedies shall in any case be collectible, enforceable or available to the Seller.

Section 9.2 In the event performance of this Contract is tendered by the Buyer and the sale is not consummated through default on the part of the Seller on the Closing Date, or if Seller fails to perform its other obligations under this Contract, then Buyer may elect (i) to terminate this Contract and its Earnest Money will be immediately returned to Buyer by the Title Company, and Seller shall pay Buyer for Buyer's out of pocket expenses in performing its due diligence and inspections, including, without limitation, attorney's fees and expenses; or (ii) Buyer shall be entitled to enforce specific performance of this Contract.

## ARTICLE 10
## Miscellaneous

Section 10.1 All notices, demands, or other communications of any type (herein collectively referred to as *"Notices"*) given by the Seller to the Buyer or by the Buyer to the Seller, whether required by this Contract or in any way related to the transaction contracted for

herein, shall be void and of no effect unless given in accordance with the provisions of this Article 10. All notices shall be in writing and delivered to the person to whom the notice is directed, either in person or by United States Mail, as a registered or certified item, return receipt requested, or by an overnight mail service. Notices delivered by mail shall be effective when deposited in a post office or other depository under the care or custody of the United States Postal Service, enclosed in a wrapper with proper postage affixed, addressed,

   <u>if to the Seller, as follows</u>:

   PDG PRESTIGE, Inc.
   Care of Jeff Carruth
   3030 Matlock Rd # 201
   Arlington, TX 76015
   jcarruth@wkpz.com

   *And with a copy to:*

   Legal List DIP Fund
   Care of Russell Mills

   <u>and if to the Buyer, as follows</u>:

   _____
   _____
   _____
   _____

   *And with a copy to:*

   _____
   _____
   _____
   _____

Either party hereto may change the address for notice specified above by giving the other party ten (10) days advance written notice of such change of address.

  <u>Section 10.2</u> Any representation, warranty, covenant or agreement herein of either party to this Contract whether to be performed before or after the time of Closing shall not be deemed to be merged into or waived by the instruments of Closing, but shall expressly survive Closing and shall be binding upon the party obligated thereby.

**EXHIBIT PDG010 - PAGE 8**

Section 10.3 It is herein agreed that this Contract may be assigned, conveyed or sold by the Buyer to a "to be formed" development company or to any person, firm, corporation or other entity and shall be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators and assigns; provided that (i) the assignee assumes all obligations under this Contract, regardless when arising; and (ii) Buyer shall remain liable for all obligations under this Agreement regardless when arising, including but not limited to those arising after the assignment.

Section 10.4 The obligations of the parties hereto shall be performable in El Paso County, Texas. THIS CONTRACT SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW MEXICO. Where required for proper interpretation, words in the singular shall include the plural; the masculine gender shall include the neuter and the feminine, and vice versa. The terms **"heirs, executors, administrators and assigns"** shall include successors, legal representatives and assigns.

Section 10.5 This Contract may not be modified or amended, except by an agreement in writing signed by the Seller and the Buyer. The parties may waive any of the conditions contained herein or any of the obligations of the other party hereunder, but any such waiver shall be effective only if in writing and signed by the party waiving such conditions or obligations.

Section 10.6 Each person executing this Contract warrants and represents that he or she is fully authorized to do so.

Section 10.7 Time is of the essence of this Contract.

Section 10.8 In the event it becomes necessary for either party hereto to file a suit to enforce this Contract or any provisions contained herein, the party prevailing in such action shall be entitled to recover, in addition to all other remedies or damages, reasonable attorneys' fees incurred in such suit.

Section 10.9 The descriptive headings of the several Articles, Sections and Paragraphs contained in this Contract are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 10.10 This Contract, including the Exhibits hereto and the items to be furnished in accordance herewith, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith. No representation, warranty, covenants, agreement or condition not expressed in this Contract shall be binding upon the parties hereto or shall affect or be effective to interpret, change or restrict the provisions of this Contract.

Section 10.11 Cooperation in Possible Like-Kind Exchange. Either Seller or Buyer may consummate the sale of the Property as part of a so-called like kind exchange (the **"Exchange"**) pursuant to § 1031 of the Internal Revenue Code of 1986, as amended (the **"Code"**), provided that by this Agreement or the other party's acquiescence to the Exchange: (i) the Closing shall not be delayed or adversely affected; (ii) the consummation or accomplishment of the Exchange

shall not be a condition precedent or condition subsequent to the other party's obligations under this Agreement; (iii) the Exchange shall not affect or diminish any of Seller's or Buyer's obligations under this Agreement; (iv) Seller and Buyer shall effect the Exchange through a ***"Qualified Intermediary"*** (as defined by 26 C.F.R. Sec. 1.1031(k)-1(g)(4)(iii)), to be selected by the party seeking the like-kind exchange; (v) neither party shall not be required to take an assignment of the purchase and sale agreement for the exchange property or be required to acquire or hold title to any real property (other than the Property sold under this Agreement) for purposes of consummating the Exchange; (vi) the party seeking such like-kind exchange treatment shall pay any additional costs or incur any obligations that would not otherwise have been incurred by Buyer or Seller had the sale not been consummated through the Exchange; (vii) the party seeking such like-kind exchange shall indemnify and hold the other party harmless of and from any and all liability occasioned thereby; and (viii) neither party shall not be responsible for compliance with or be deemed to have warranted to the other party that the Exchange in fact complies with § 1031 of the Code.

[Remainder of page intentionally left blank.  Signature page follows.]

**EXHIBIT PDG010 - PAGE 10**

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS CONTRACT ON THE DATE SHOWN BELOW. THIS CONTRACT MAY BE SIGNED IN MULTIPLE COUNTERPART ORIGINALS.

**SELLER:**

**PDG PRESTIGE, Inc.**

By: _/s/ Michael Dixson_
Name: Michael Dixson
Title: President

Date: 1/5/2023


**BUYER:**

**Camelot Ventures, LLC**

By: _/s/ Garon Fulgenzi_
Name: Garon Fulgenzi
Title: Managing Member

Date: 1/5/2023


Approved by:

Legal List DIP Fund

By_____
Name_____
Title_____

Date: _____

11

**EXHIBIT PDG010 - PAGE 11**

# EXHIBIT "A"

## Property Description

Lot 3A of Mesilla Valley Mall Replat # 5
550 S. Telshor Blvd Las Cruces, NM 88011

12

**EXHIBIT PDG010 - PAGE 12**